**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: 23-CV-80764-RLR**

JACK W. NICKLAUS,

     Plaintiff,

v.

HOWARD P. MILSTEIN,
ANDREW W. O'BRIEN, and
NICKLAUS COMPANIES, LLC

     Defendants.

_____/

**DEFENDANTS' HOWARD P. MILSTEIN, ANDREW W. O'BRIEN,**
**AND NICKLAUS COMPANIES, LLC, MOTION TO STAY PROCEEDINGS**
**OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT**

                             **COLE, SCOTT & KISSANE, P.A.**
                             Justin B. Levine (Bar No. 106463)
                             Lizza C. Constantine (Bar No. 1002945)
                             Tre'Ana L. Thompson (Bar No. 1031361)
                             Esperanté Building
                             222 Lakeview Avenue, Suite 120
                             West Palm Beach, Florida 33401
                             Telephone (561) 383-9200
                             Facsimile (561) 683-8977

                             *Counsel for Defendants Howard P. Milstein,*
                             *Andrew W. O'Brien, and Nicklaus Companies, LLC*

Dated May 26, 2023

## TABLE OF CONTENTS

MEMORANDUM OF LAW ............................................................................................. 1

PRELIMINARY STATEMENT .................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 3

ARGUMENT .................................................................................................................. 8

   I.    This Action Should be Stayed Pending Resolution of the New York Action ..................... 8

      A.   Legal Standard for a Motion to Stay ........................................................................ 8

      B.   The New York Action and This Action Are Parallel Actions ........................................ 9

      C.   The *Colorado River* Factors Strongly Support Staying the Federal Court Proceedings 10

  II.   In the Alternative, This Action Should be Dismissed ........................................................ 16

      A.   Mr. Nicklaus's Claims Should be Litigated in New York Based on a Valid and Enforceable Forum Selection Clause in the LLC Agreement ................................................ 16

      B.   Mr. Nicklaus's Complaint Should be Dismissed for Failure to State a Claim on Which Relief can be Granted ................................................................................................ 18

         1.   Legal Standard for a Motion to Dismiss Under Rule 16(b)(6) .............................. 18

         2.   Mr. Nicklaus's Claims Alleging False Statements Should be Dismissed ............... 19

            a.   The Absolute Immunity Conferred by the Litigation Privilege Bars Mr. Nicklaus's Defamation and Unfair Competition Claims ............................... 19

            b.   Mr. Nicklaus's Counts II Through V Are Dependent on Mr. Nicklaus's Ownership of Intellectual Property Rights, And Due to An Established Lack of Ownership, Should Be Dismissed .............................................................. 23

            c.   Counts II and IV – "False Statements Intended to Impair Competition" Under Common Law Unfair Competition and the Lanham Act – Should Be Dismissed ....... 24

         3.   Count III – False Endorsement Under Florida Statute §540.08 Should Be Dismissed ................................................................................................ 25

4.   Count V – False Endorsement Under the Federal Lanham Act, 15 U.S.C. §1125(a) – Should Be Dismissed ................................................................................................ 26

III.   Conclusion ................................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aflalo v. Weiner*, No. 17-61923-CIV, 2018 WL 3235529 (S.D. Fla. July 2, 2018)...................... 22

*Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882 (11th Cir. 1990)..... 8, 10, 13, 14

*Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320 (11th Cir. 2004) ................ 8, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).......................................................................... 18

*Bosdorf v. Beach*, 79 F. Supp. 2d 1337 (S.D. Fla. 1999) ............................................................ 15

*Burgos v. Suntrust Bank N.A.*, No. 13-21197-CIV, 2014 WL 11880360 (S.D. Fla. Nov. 17, 2014) .................................................................................................................................................. 15

*Colorado River Water Conservation Dist., v. United States*, 424 U.S. 800 (1976) ........................ 8

*DelMonico v. Traynor*, 116 So. 3d 1205 (Fla. 2013) ................................................................... 19

*Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380 (Fla. 2007)............. 19

*Elite Advantage, LLC v. Trivest Fund, IV, L.P.*, 2015 WL 4982997 (S.D. Fla. Aug. 21, 2015).... 17

*Falic v. Legg Mason Wood Walker, Inc*., 347 F. Supp. 2d 1260 (S.D. Fla. 2004)......................... 22

*Fariello v. Gavin,* 873 So.2d 1243 (Fla. 5th DCA 2004)............................................................. 19

*Fed USA Franchising, Inc. v. Merille, Inc*., No. 812CV02416SCBTGW, 2013 WL 12155944 (M.D. Fla. Feb. 21, 2013) ........................................................................................................ 9

*Fortson v. Colangelo*, 434 F. Supp. 2d 1369 (S.D. Fla. 2006)...................................................... 22

*Freeman v. Wells Fargo Bank, N.A.*, No. 19-CV-80670, 2019 WL 13147405 (S.D. Fla. Dec. 12, 2019) ....................................................................................................................................... 15

*Freeman*; *Paolino v. U.S. Bank, Nat'l Ass'n as Tr. for New Residential Pass-Through Tr. V*, No. 18-60789-CIV, 2018 WL 4409996 (S.D. Fla. July 24, 2018).................................................. 15

*Gandy v. Trans World Computer Tech. Group*, 787 So. 2d 116 (Fla. 2d DCA 2001).................. 20

*GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024 (11th Cir. 2014)................................ 17

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX

*Gold-Fogel v. Fogel*, 16 F.4th 790 (11th Cir. 2021)........................................................ 8

*Grasta v. First Union Sec., Inc.*, 358 F.3d 840 (11th Cir. 2004) ...................................... 3

*Gundogdu v. WDF-4 Wood Harbour Park Owner, LLC*, No. 21-61003-CIV, 2022 WL 2702624 (S.D. Fla. July 12, 2022)............................................................................... 14

*Gursky Ragan, P.A. v. Association of Poinciana Villages, Inc.*, 314 So.3d 594 (Fla. 3d DCA 2020) ............................................................................................................... 21

*Hindi v. BirdEye, Inc.*, No. 19-CV-61201, 2019 WL 4091425 (S.D. Fla. Aug. 29, 2019)...... 17, 18

*Holiday Inns of Am., Inc. v. Holiday House, Inc.*, 279 F. Supp. 648 (W.D. Pa. 1968)............11, 12

*Huszar v. Gross*, 468 So. 2d 512 (Fla. 1st DCA 1985) ................................................... 21

*Jackson-Platts v. General Elec. Capital Corp.*, 727 F.3d 1127 (11th Cir. 2013)............................ 8

*JAWHBS, LLC v. Arevalo*, No. 15-24176-CIV, 2016 WL 4142498 (S.D. Fla. Aug. 4, 2016) ........ 3

*Kaleta v. City of Holmes Beach*, 2023 WL 2756919 (M.D. Fla. April 3, 2023)............................ 8

*Key v. Wise*, 629 F.2d 1049 (5th Cir. 1980).................................................................. 17

*King Ranch, Inc. v. King Ranch Contractors, LLC*, 2013 WL 2371246 (M.D. Fla. May 30, 2013) ................................................................................................................... 25

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So.2d 606 (Fla 1994)............................................................................................. 19

*Liles v. Ginn-La W. End, Ltd.*, 631 F.3d 1242 (11th Cir. 2011)...................................................... 3

*Llauro v. Linville*, 20-12862, 2021 WL 5767935 (11th Cir. Nov. 6, 2021)................................... 24

*Llauro v. Tony*, 470 F. Supp. 3d 1300 (S.D. Fla. 2020)................................................... 24

*Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 106 F.3d 355 (11th Cir.1997).... 26

*Makro Capital of America, Inc. v. UBS AG,* 372 F. Supp. 2d 623 (S.D. Fla. 2005) ..................... 23

*Martin K. Eby Construction Co., Inc. v. Jacobs Civil, Inc.,* 2006 WL 1881359 (M.D. Fla. 2006) ................................................................................................................... 23

*Moorer v. Demopolis Waterworks & Sewer Bd.,* 374 F.3d 994 (11th Cir. 2004)............................ 9

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ............................ 8

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX

*Nat'l Football League v. Alley, Inc.*, 624 F. Supp. 6 (S.D. Fla. 1983)............................................ 25

*New York v. Meta Platforms, Inc.*, No. 21-7078, 2023 WL 3102921 (D.C. Cir. Apr. 27, 2023)..... 4

*Petmed Express, Inc. v. Medpets.com, Inc.,* 336 F.Supp.2d 1213 (S.D.Fla.2004) ....................... 24

*Popescu v. JP Morgan Chase & Co.*, No. 12-80851-CIV, 2013 WL 5535867 (S.D. Fla. Oct. 7, 2013) .................................................................................................................................. 15

*Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939) ......................................10, 11

*Regions Bank v. Am. Leisure Resorts, Inc.*, No. 13-20638-CIV, 2013 WL 12164644 (S.D. Fla. June 28, 2013) ..........................................................................................................................11

*Samara v. Juice Plus+ Co., LLC*, No. 620CV520ORL31EJK, 2020 WL 13389215 (M.D. Fla. Sept. 9, 2020) ..............................................................................................................................21

*Schafler v. Indian Spring Maintenance Ass'n.,* 139 Fed. Appx. 147 (11th Cir. 2005) ................. 23

*Sec. & Exch. Comm'n v. Harbor City Cap. Corp*., No. 6:21-CV-694-CEM-DCI, 2023 WL 1105282 (M.D. Fla. Jan. 30, 2023) ..........................................................................................11

*Selton v. U.S. Bank Trust Nat'l Ass'n*, 124 F. Supp. 3d 1245 (M.D. Fla. 2015) .....................11, 12

*Synergy Billing, LLC v. Priority Mgmt. Grp., Inc.*, No. 617CV00929ORL31DCI, 2017 WL 4922203 (M.D. Fla. Oct. 31, 2017) ............................................................................................ 22

*Tana v. Dantanna's*, 611 F.3d 767 (11th Cir. 2010) .................................................................. 26

*Turner v. Costa Crociere S.P.A.*, 9 F.4th 1341 (11th Cir. 2021) .................................................. 16

*Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52 (11th Cir. 2006) ............................... 20

*Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261 (S.D. Fla. 2004) ............................................. 16

*Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208 (M.D. Fla. 2005)........................ 24

*Wolf v. Menh*, 810 Fed. Appx. 10 (D.C. Cir. 2020) .................................................................... 20

*Wolf v. Menh*, CV 19-305 (RMC), 2019 WL 3753121 (D.D.C. Aug. 8, 2019)............................ 20

*Wright v. Yurko*, 446 So. 2d 1162 (Fla. 5th DCA 1984)............................................................. 20

**STATUTES**

15 U.S.C. § 1125(a) ................................................................................................................. 25

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX

28 U.S.C. §1404(a) ................................................................................................ 1

Fla. Stat. §540.08 (1)(a) ...................................................................................... 24

Fla. Stat. §540.08 (1)(b) ...................................................................................... 24

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 1, 15

Wright & Miller, 13F Fed. Prac. & Proc,. Juris. § 3631 (3d ed) ....................................11

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX

Defendants, HOWARD P. MILSTEIN ("Milstein"), ANDREW W. O'BRIEN ("O'Brien") and NICKLAUS COMPANIES, LLC ("the Company") (collectively, the "Defendants"), by and through the undersigned counsel, hereby move for the entry of an Order to Stay all proceedings in this lawsuit pending the resolution of the related and previously-filed lawsuit pending in the Supreme Court of the State of New York, or alternatively, to dismiss the Complaint, pursuant to the *forum non conveniens* doctrine and 28 U.S.C. §1404(a), or alternatively, to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. In support of this motion, Defendants state as follows.

## MEMORANDUM OF LAW

## PRELIMINARY STATEMENT

Defendants are asking this Court to stay or dismiss this action, which is a reactive lawsuit brought by Plaintiff, Jack W. Nicklaus ("Mr. Nicklaus"), in an effort to get more favorable rulings on issues that are not only being litigated in New York State Supreme Court (the "New York Court"), but are also the subject of preliminary rulings that indicate that he is likely to lose in that court. Although Mr. Nicklaus contractually agreed to litigate in that venue, he now asks this Court to decide those very issues, which he has repackaged into federal Lanham Act, violation of publicity rights, defamation and unfair competition counts that do not even state a claim.

This action is the third proceeding involving these parties dealing with issues relating to Mr. Nicklaus's resignation as Co-Chairman of the Company on May 3, 2022, and his efforts to compete against the Company—of which he is still a Member. Upon his resignation, Mr. Nicklaus brought an arbitration proceeding to determine his rights under his Employment Agreement. The Company then sued Mr. Nicklaus in the New York Court—as the forum it was contractually bound to use—over his acts against the best interests of the Company, including competing against the Company and seeking to misappropriate assets, including the commercial rights to his name, image and likeness, which he and his closely-held corporation sold to the Company for more than $145 million in 2007. That action was brought in New York County Supreme Court, Index No.: 656284/2022, and is styled *Nicklaus Companies, LLC v. GBI Investors, Inc., and Jack W. Nicklaus* (the "New York Action").[1]

---

[1] The New York Action's docket is available on NYSCEF, a New York government website of which this Court may take judicial notice: https://iapps.courts.state.ny.us/nyscef/DocumentList?docketId=Nkr_PLUS_8fkrOlRyqwQ68W3

For the past year, Mr. Nicklaus and the Company have been litigating in the New York Court the issues of whether (a) he or the Company owns the commercial rights to his name, image and likeness, (b) he is restrained from competing against the Company and (c) he engaged in conduct alleged to be against the interests of the Company. That court has already begun deciding issues on a preliminary basis and has issued rulings that, based on the current record, Mr. Nicklaus has already lost, or is likely to lose, on several key issues.  First, the New York Court denied Mr. Nicklaus's motion to dismiss the Company's claims on grounds of *forum non conveniens*, citing Mr. Nicklaus's agreement to bring any claims against the Company in a New York court.

After a three-day evidentiary hearing that concluded on November 23, 2022, the New York Court held that the Company was entitled to a preliminary injunction restraining Mr. Nicklaus because it had shown a likelihood of success on the merits with respect to its claims that the Company owns "the exclusive right to license Mr. Nicklaus's personal name and likeness rights." NYSCEF No. 246, at 349:7-16. On December 9, 2022, the New York Court issued a preliminary injunction restraining Mr. Nicklaus from (a) using intellectual property he and his closely held corporation sold to the Company and (b) "licensing Mr. Nicklaus's name, image, and likeness for commercial endorsements without the Company's prior written consent" (excluding certain non-commercial uses).  NYSCEF No. 247, at 2.

Mr. Nicklaus has responded by bringing this action, seeking rulings to undercut the injunction that is currently restraining him.  For example, in Counts II, III, IV and V Mr. Nicklaus seeks a ruling that the Company has no right to use Mr. Nicklaus's name, image and likeness, which would be necessary to support his claims of unfair competition, violation of the Florida publicity rights statute and false statements and false endorsements in violation of the Lanham Act. In Counts I, II and IV, Mr. Nicklaus also seeks a ruling that the New York Action's Complaint's allegations of Mr. Nicklaus's conduct against the best interests of the Company are false, in support of claims for defamation, unfair competition and false statements in violation of the Lanham Act.

Given that the essential issues that Mr. Nicklaus seeks to litigate in this action either arise out of or are currently being litigated in the New York Action—creating a significant risk of contradictory findings by this court and the New York Court--Defendants respectfully request this

---

LZg==&PageNum=1&narrow=. All material from the New York Action's docket that is cited to in this Motion will be identified by "NYSCEF" followed by the document's respective docket entry number.

Court stay this action and permit the New York Court to resolve these issues in the venue that the parties freely chose as their agreed forum, and where they have been litigated for the past year.

Alternatively, this action should be dismissed on multiple grounds. Mr. Nicklaus is bringing his latest claims in an inconvenient forum—in contravention of his agreement to bring all such claims in a New York court. These claims also fail to state a claim on which relief may be granted. Mr. Nicklaus's conclusory allegations that Defendants' statements relating to the New York Action are false and defamatory fail to allege essential elements and are barred by Florida's litigation privilege. Moreover, Mr. Nicklaus's allegations of violations of Florida common law, Fla. Stat. §540.08, and the Lanham Act by way of improper use of Mr. Nicklaus's name, image and likeness should be dismissed as a matter of law given that the rights to that intellectual property were transferred to the Company in return for more than $145 million. The New York Court has already recognized this on a preliminary basis in granting the Company's Motion for Preliminary Injunctive Relief. *See* NYSCEF No. 247.

## <u>FACTUAL BACKGROUND</u>

The following facts are derived from the factual allegations of the Complaint, documents referenced in the complaint and documents central to the Mr. Nicklaus's claims. *See, e.g., Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004); ("[i]n analyzing the sufficiency of the complaint, we limit our consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed"); *see also JAWHBS, LLC v. Arevalo*, No. 15-24176-CIV, 2016 WL 4142498, at *7 (S.D. Fla. Aug. 4, 2016) ("court may consider an extrinsic document in ruling on a motion to dismiss if the document is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged," and, "[i]n particular, [a court] may take judicial notice of and consider documents which are public records, [and] that are attached to a motion to dismiss") (internal quotation marks and citations omitted); *see also Liles v. Ginn-La W. End, Ltd.*, 631 F.3d 1242, 1244 n.5 (11th Cir. 2011) (on motion to dismiss for improper venue, "[c]ourt may consider materials outside the pleadings").

Prior to May 2007, Mr. Nicklaus engaged in his business ventures—principally golf-course design and management—"through Golden Bear International, Inc. ('GBI'), a closely-held corporation owned by Mr. Nicklaus and his family." Complaint [ECF No. 1-1] ("Compl."), ¶¶ 18, 19, 38. As Mr. Nicklaus acknowledged in multiple documents, including Registration Statements that he signed and filed with the U.S. Securities and Exchange Commission, prior to May 2007

GBI held the "exclusive ownership of … the Nicklaus Image," which was defined as "the right to use the name, image, likeness, nickname, biographical data, and other identifying characteristics of Jack W. Nicklaus …." NYSCEF No. 316, ¶¶ 6, 7; *see also* NYSCEF No. 320; *see also* NYSCEF No. 321; *see also* NYSCEF No. 321, at pgs. 337, 347. [2]

In May 2007, Mr. Nicklaus and GBI consummated the sale of Mr. Nicklaus's intellectual-property rights—including commercial rights to Mr. Nicklaus's name, nickname ("Golden Bear"), image, and likeness and "a host of trademarks, service marks, copyrights, patents, and other specified intellectual property"—to the Company for $145 million and 100% of the Class A Units in the Company. Compl.*,* ¶¶ 38-40. As acknowledged by the Complaint, the May 2007 transaction was effected through a series of related agreements, including a Purchase and Sale Agreement (the "PSA") among the Company, GBI and others, and an Amended and Restated Limited Liability Company Agreement (the "LLC Agreement") among the Company, Mr. Nicklaus, GBI and others. *Id*., ¶ 38.

The PSA provided that the Company was purchasing "[a]ll of the intangible rights and property of GBI, including all of the publicity and related commercial rights held by GBI to use and/or license the use of the endorsement, name, nickname, likeness, signature and/or other identifying characteristics of Jack W. Nicklaus and biographical information related to his career …." NYSCEF No. 113, PSA Annex A, § 15. Mr. Nicklaus's closely-held corporation GBI represented that Mr. Nicklaus did not retain any interest in those commercial rights to use his name, image and likeness by warranting that "aside from certain specified exceptions, the assets sold to the Company "include all … interests … heretofore held by a member of the Nicklaus Family in … any … asset held by, GBI …." NYSCEF No. 113, § 4.19 at 25.

The parties clearly delineated the scope of the rights to Mr. Nicklaus's name, image and likeness being purchased by the Company by expressly identifying the limited carve-out of rights that were not being transferred to the Company. Schedule 4.10(b) to the PSA explicitly states that:

> For the avoidance of doubt, the right of Jack W. Nicklaus to utilize his endorsement, name, nickname (the "Golden Bear"), likeness, signature and biographical information to identify himself as a

---

[2] This Court can take judicial notice of SEC Registration Statements signed by Mr. Nicklaus. *See, e.g., New York v. Meta Platforms, Inc.*, No. 21-7078, 2023 WL 3102921, at *10 (D.C. Cir. Apr. 27, 2023) ("[t]he FTC's complaint is particularly suitable for judicial notice because we often take judicial notice of facts on the public record ... as a court may do upon a motion to dismiss") (internal quotation marks and citation omitted).

4

>   professional golfer and for personal, investment and charitable
>   purposes is not an asset of GBI and continues to be retained by Mr.
>   Nicklaus individually.

NYSCEF No. 113, Schedule 4.10(b) at 24. The PSA did not exclude any other portion of the rights to Mr. Nicklaus's name, image and likeness from the sale to the Company. Thus, the Company acquired all of the rights to use Mr. Nicklaus's name, image and likeness for commercial purposes.

In the LLC Agreement, Mr. Nicklaus acknowledged that the Company was acquiring the commercial rights to his name, image and likeness, which was referred to as the "Nicklaus IP" and defined as "mean[ing] the name, photograph, likeness, and image of [Mr. Nicklaus] and the [Nicklaus]-related brands and trademarks now existing or owned by or licensed to the Company in the future, including, but not limited to, Nicklaus, Jack Nicklaus, Jack Nicklaus Signature and Golden Bear."  NYSCEF No. 114 at 13.  Mr. Nicklaus agreed that the Company was acquiring the right to "to, use, exploit, license, assign, sell [and] otherwise transfer the Nicklaus IP," subject only to Mr. Nicklaus's right to object to certain new activities, which right could not be exercised unreasonably.  NYSCEF No. 114 § 6.3 at 33; Compl. ¶ 47. Mr. Nicklaus also agreed that the Company had been formed to acquire and hold GBI's assets "and engag[e] in the businesses of, among other things, golf course design and management, licensing of certain intellectual property . . . and marketing personal service contracts related to the personal endorsement and other publicity rights of [Mr. Nicklaus] . . . ."  NYSCEF No. 114 § 1.4 at 2; *see also* Compl. ¶ 45.

In the LLC Agreement Mr. Nicklaus and the Company also agreed to a forum selection clause that provided for a broad consent to jurisdiction and an even broader forum selection provision.  With respect to jurisdiction, Mr. Nicklaus and the Company agreed that each of them "irrevocably and unconditionally submits, for itself and its property, to the jurisdiction of the courts of the State of New York, and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement …."  With respect to choice of forum, they agreed that all disputes between them—not just disputes relating to the LLC Agreement—would be brought in a New York court: "Each party further agrees that any action or proceeding brought against the other, shall be brought only in a court of the State of New York, or to the extent permitted by law, in such federal court." NYSCEF No. 114 § 9.18 at 51.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX

On May 3, 2022, Mr. Nicklaus resigned his executive positions at the Company and initiated an arbitration against the Company to determine his rights under his Employment Agreement.  Compl. ¶¶ 122, 123. On May 13, 2022, the Company filed a complaint against Mr. Nicklaus and GBI alleging breaches of the LLC Agreement and the PSA.  NYSCF No. 1; *see also* Compl ¶¶ 126, 127.   On August 22, 2022, the Company filed an amended complaint (the "Amended Complaint") that added a claim for Mr. Nicklaus's breach of his Non-Competition Agreement with the Company. NYSCEF No. 54; *see also* Compl. ¶ 127.

The first numbered paragraph of the Amended Complaint summarizes the main issues in the New York Action:

> This is a breach of contract, tortious interference with contract and breach of fiduciary duty action in which [Mr. Nicklaus and GBI] are reneging on a deal worth more than $145 million in which they agreed to transfer the exclusive rights to valuable intellectual property and services. Despite being paid an enormous sum, [Mr. Nicklaus and GBI] have wrongfully continued to use these rights, acted in bad faith, wrongfully diverted opportunities to the detriment of Plaintiff's business and willfully engaged in activities damaging to the brand and other intellectual property owned by the Company. Plaintiff seeks damages and injunctive and declaratory relief.

NYSCEF No. 54 § 1.

The Amended Complaint alleges that although the Company purchased the exclusive commercial rights to the Nicklaus IP, Mr. Nicklaus has attempted to renege on that deal and wrongfully repossess those rights in order to compete against the Company—and otherwise engaged in conduct against the best interests of the Company for financial gain—in breach of his duties under the LLC Agreement and his Non-Competition Agreement, and otherwise   NYSCEF No. 54 §§ 1-13.

Mr. Nicklaus asked the New York Court to dismiss the New York Action on grounds of *forum non conveniens*, but that court denied the motion, citing Mr. Nicklaus's agreement to the LLC Agreement's forum selection clause. NYSCEF No. 240; NYSCEF No. 246 at 338.

On November 23, 2022, following a three-day evidentiary hearing, the New York Court granted the Company's motion for a preliminary injunction prohibiting Mr. Nicklaus from exploiting the Nicklaus IP that the Company had purchased. The New York Court ruled that the Company had shown "a likelihood of success" on its claim that it owns the subject intellectual property, including "the exclusive right to license Mr. Nicklaus's personal name and likeness

6

rights.  NYSCEF No. 246 at 349:7-16; *see also* Compl. ¶ 130.  On December 9, 2022, the New York Court issued the preliminary injunction order, which enjoined Mr. Nicklaus and GBI from

> (i) using or authorizing the use of Transferred Intellectual Property as defined in Section 4.10(a) of the Purchase and Sale Agreement ("PSA" [NSYCEF 113]), including Schedule 4.10(a) thereto, without the Company's prior written consent; and (ii) *licensing Mr. Nicklaus's name, image, and likeness for commercial endorsements without the Company's prior written consent*; provided, however, that nothing in this paragraph shall restrain Defendants from using or authorizing the use of Mr. Nicklaus's name, image, and likeness to identify Mr. Nicklaus as a professional golfer, or for other personal, investment, and charitable purposes ….

NYSCEF No. 247 at 2 (emphasis added); *see also* Compl. ¶130.

Although the New York Court has already heard evidence of Mr. Nicklaus's misconduct at the three-day evidentiary hearing and has ruled on a preliminary basis that the Company owns the exclusive commercial rights to the Nicklaus IP, Mr. Nicklaus now seeks to litigate those very issues in a Florida court.

Four of Mr. Nicklaus's five claims are based on the Company's alleged wrongful assertion of exclusive rights to the Nicklaus IP.  Counts II (unfair competition), III (false endorsement in violation of Fla. Stat. § 540.08), IV (false statements in violation of the Lanham Act) and V (false endorsement in violation of the Lanham Act) are based on allegations that the Company wrongfully used the Nicklaus IP and misrepresented Mr. Nicklaus's supposed rights to that intellectual property. *See* Compl. ¶¶ 258, 260 265, 266, 273, 275, 282, 285.

Three of Mr. Nicklaus's five claims actually seek to litigate—in this forum—the truth of the Company's allegations in the New York Action.  Counts I (defamation), II (unfair competition) and  IV (false statements in violation of the Lanham Act) are based on allegations that the company's allegations in the Amended Complaint are false and have been used by the Company to defame Mr. Nicklaus or to compete unfairly against him.  *See* Compl.  ¶¶ 142-46, 241-43, 258, 260, 273, 275.

Thus, this action is both an attempt to relitigate issues that Mr. Nicklaus has been litigating unsuccessfully in the New York Action and a collateral attack on the propriety of that action and the injunctive relief entered against Mr. Nicklaus by the New York Court.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX

<u>**ARGUMENT**</u>

**I.      This Action Should be Stayed Pending Resolution of the New York Action**

**A.      Legal Standard for a Motion to Stay**

Generally, the "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction…." *Colorado River Water Conservation Dist., v. United States*, 424 U.S. 800, 817 (1976). However, although federal courts have complete discretion to exercise the jurisdiction afforded them, federal courts can abstain to avoid duplicative litigation with state courts in deserving circumstances. *See*, *Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004).

"Under [the *Colorado River*] doctrine, a federal court should abstain if a parallel lawsuit is proceeding in state court and judicial-administration reasons demand abstention." *Kaleta v. City of Holmes Beach*, 2023 WL 2756919, *2 (M.D. Fla. April 3, 2023). A parallel state action is one that involves substantially the same parties and substantially the same issues as the federal action. *See*, *Jackson-Platts v. General Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013). Substantially similar, however, does not mean identical; neither the parties nor the issues need to be identical. *See Ambrosia Coal and Const. Co.*, 368 F.3d at 1330; *Gold-Fogel v. Fogel*, 16 F.4th 790, 801 (11th Cir. 2021).

Without fashioning a bright-line test for determining when the existence of concurrent state and federal cases warrant federal court abstention, the Supreme Court has discussed several factors that district courts may consider. The factors to be considered are: (1) whether one of the courts has assumed jurisdiction over property at issue; (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; (4) the order in which jurisdiction was obtained by the two courts; (5) whether state or federal law will be applied; and (6) the adequacy of the state court to protect the parties' rights. *See*, *Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 884 (11th Cir. 1990). Additionally, "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, n. 20 (1983).

The factors should be considered as flexible, and not as a mechanical checklist. *See Ambrosia Coal and Const. Co.*, 368 F.3d at 1332.  The Eleventh Circuit has held that "a stay, not

a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the Colorado River doctrine." *Moorer v. Demopolis Waterworks & Sewer Bd.,* 374 F.3d 994, 998 (11th Cir. 2004) (internal quotation marks and citation omitted).

**B.    The New York Action and This Action Are Parallel Actions**

"Parallel proceedings exist when issues in a federal suit are inextricably intertwined with issues contained in a concurrent state suit. *Fed USA Franchising, Inc. v. Merille, Inc*., No. 812CV02416SCBTGW, 2013 WL 12155944, at *2 (M.D. Fla. Feb. 21, 2013) (internal quotation marks and citation omitted).

This action and the New York Action are clearly "inextricably intertwined."  Both actions involve the relationship of Mr. Nicklaus to the Company that not only bears his name, but to which he has sold rights to his name, image and likeness.  Both suits turn on whether Mr. Nicklaus or the Company owns the commercial rights to the Nicklaus IP.  The conduct of Mr. Nicklaus is also central to both suits since it is the Company's allegations regarding that conduct in the New York Action that Mr. Nicklaus claims are false and defamatory in this action.  Mr. Nicklaus's claims of unfair competition in this action are dependent on his establishing that he has any right to compete against the Company—which is also being litigated in the New York Action, where the Company asserts Mr. Nicklaus is still subject to his Non-Competition Agreement with the Company.

The New York Court has already begun deciding these issues on a preliminary basis. Mr. Nicklaus's Counts II (unfair competition), III (false endorsement in violation of Fla. Stat. § 540.08), IV (false statements in violation of the Lanham Act) and V (false endorsement in violation of the Lanham Act) are all based on Mr. Nicklaus's claim that he—not the Company—owns the commercial rights to the Nicklaus IP.  Yet the New York Court is not only hearing this issue—it has ruled against Mr. Nicklaus on this issue on a preliminary basis by granting the Company a preliminary injunction protecting its commercial rights to the Nicklaus IP. NYSCEF No. 246 at 349:7-16; *see also* Compl. ¶ 130.  Indeed, this action is undoubtedly reactive to the New York Action, and is an effort by Mr. Nicklaus to simply litigate his supposed rights to the Nicklaus IP in a different venue.

Mr. Nicklaus's Counts I, II and IV in this action are all based on claims of the alleged falsity of the Company's allegations in the New York. Action. Mr. Nicklaus is actually seeking to have this Court rule on the truth of allegations in the New York Action.

9

Mr. Nicklaus's Counts II – V in this Federal Action each have primary or secondary components of alleged anticompetitive conduct. Mr. Nicklaus asserts Florida common law unfair competition (Count II), false endorsement in violation of Fla. Stat. §540.08 (Count III), false statements to impair competition in violation of the Lanham Act (Count IV), and false endorsement in violation of the Lanham Act (Count V).  Each of these claims relates to the Company's rights to use Mr. Nicklaus's name, image, and likeness in relation to commercial golf ventures. A determination as to the Company's rights to use such intellectual property is currently being litigated in the New York Action.

Thus, the two actions are "inextricably intertwined."  The resolution of the New York Action will undoubtedly determine essential issues in this action. Given that the New York Action and this action are parallel proceedings, the *Colorado River* factors must be assessed to determine whether abstention is required.

### C.    The *Colorado River* Factors Strongly Support Staying the Federal Court Proceedings

A consideration of the *Colorado River* factors mandates that this Court should abstain from exercising jurisdiction. As stated above, the factors in the *Colorado River* test are: (1) whether one of the courts has assumed jurisdiction over property at issue; (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; (4) the order in which jurisdiction was obtained by the two courts; (5) whether state or federal law will be applied; and (6) the adequacy of the state court to protect the parties' rights. *See Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 884 (11th Cir. 1990).

***Factor one*** of the *Colorado River* test weighs in favor of abstention as a federal court is required to abstain from interfering with a preexisting state-court action adjudicating property rights.

When the ownership of, or right to use, property—whether tangible or intangible—is at issue in two actions, the first court assuming jurisdiction has exclusive jurisdiction over the property, and the second court should abstain.  This approach is required by multiple Supreme Court decisions, including the leading case of *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939). In *Princess Lida*, a state and federal court had parallel actions involving administration of the same trust. The Supreme Court held that "if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX

is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other." *Id.* at 466.  Noting that the state action was filed first, the Court affirmed the state court's injunction prohibiting litigation in the federal court, holding that the state court "could not effectively exercise the jurisdiction vested in it, without a substantial measure of control of the trust funds," and "the jurisdiction acquired upon the filing of the trustees' account is exclusive. *Id.* at 467.

Federal courts have held that under the *Princess Lida* doctrine, "when two *in rem* or *quasi in rem* actions involve the same property, 'the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other.'" *Selton v. U.S. Bank Trust Nat'l Ass'n*, 124 F. Supp. 3d 1245, 1249 (M.D. Fla. 2015) (quoting *Princess Lida* , 305 U.S. at 466 (1939)); *see also Regions Bank v. Am. Leisure Resorts, Inc.*, No. 13-20638-CIV, 2013 WL 12164644, at *2 (S.D. Fla. June 28, 2013):  (under the "prior exclusive jurisdiction doctrine, also known as the *Princess Lida* doctrine," "[t]he first court to assume control of the res exercises exclusive subject matter jurisdiction"); *see also Sec. & Exch. Comm'n v. Harbor City Cap. Corp.*, No. 6:21-CV-694-CEM-DCI, 2023 WL 1105282, at *2 (M.D. Fla. Jan. 30, 2023) (citing *Princess Lida* for principle that "the court that first exercised jurisdiction over [p]roperty has exclusive jurisdiction of the [p]roperty"). As a leading treatise has explained,

> an abundance of federal decisional law, including an impressive array of Supreme Court decisions, makes it clear that *in all cases involving a specific piece of property*, real or personal (*including various forms of intangible property*), the federal court's jurisdiction is qualified by the ancient and oft-repeated rule—often called the doctrine of prior exclusive jurisdiction—that *when a state or federal court of competent jurisdiction has obtained possession, custody, or control of particular property, that authority and power over the property may not be disturbed by any other court.*

Wright & Miller, 13F Fed. Prac. & Proc,. Juris. § 3631 (3d ed) (emphasis added).

Intellectual property is one of the forms of intangible property that courts have found are subject to the *Princess Lida* doctrine. As one court has noted, "trade marks, though intangible and not chattels, constitute genuine and substantial property rights akin to a res …."  *Holiday Inns of Am., Inc. v. Holiday House, Inc.*, 279 F. Supp. 648, 649 (W.D. Pa. 1968). Thus, when the rights to such intellectual property are at issue in two courts, "[t]he mutual forbearance prescribed in cases

such as [*Princess Lida*], should therefore be practiced and the jurisdiction of the court first on the scene to deal with the res should be respected.  *Id.* at 649-50.

"[C]ourts look to the plaintiffs' requested relief to determine whether an action proceeds *quasi in rem*; if the presiding court must have a substantial measure of 'control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought,' then the action is *quasi in rem*." *Selton v. U.S. Bank Tr. Nat. Assn.*, 124 F. Supp. 3d at 1250 (quoting *Princess Lida*, 305 U.S. at 466).   Here, both actions are *quasi in rem* because they require adjudication of who owns the disputed intellectual property rights and how those rights may be used.

Mr. Nicklaus's Counts III and V for alleged violations of the Florida publicity rights statute and the Lanham Act are both based on allegations that the Company misused Mr. Nicklaus's name, image and likeness.  *See* Compl. ¶¶ 265, 282.  According to Mr. Nicklaus, he "has not consented to" these uses of his name, image and likeness "either orally or in writing …."  Compl. ¶ 265.  Similarly, Mr. Nicklaus's Counts II and IV for unfair competition and violation of the Lanham Act allege that the Company's statements about the extent to which Mr. Nicklaus may engage in the golf course design business "in his own name" were false.  Compl. ¶¶ 260, 275.  Mr. Nicklaus's seeks injunctive relief to prohibit the Company from such uses of his name, image and likeness.  Compl. ¶¶ 263, 270, 280, 288.

Mr. Nicklaus's requested relief is the mirror image of the Company's requested relief in the New York Action, where the Company requests similar relief with respect to its rights to the "Nicklaus IP," which the LLC Agreement defines as including "the name, photograph, likeness and image" of Mr. Nicklaus.  NYSCEF No. 114 at 13.  The Company is asking the New York Court for a "declaratory judgment that GBI and Mr. Nicklaus can provide Mr. Nicklaus's golf course design services and commercial endorsements, and grant licenses to use the Nicklaus IP, only through Nicklaus Companies" and an "injunction ordering GBI and Mr. Nicklaus to cease providing Mr. Nicklaus's golf course design and marketing services (including commercial endorsements) and offering rights to use Nicklaus IP for commercial purposes, without first obtaining authorization from Nicklaus Companies."  *See* NYSCEF No. 54, at 46 (Prayer for Relief).

The New York Court has already exercised jurisdiction over these intangible rights, by holding—after a three-day evidentiary hearing—that the Company is likely to prevail on its

argument that it owns the exclusive rights to Mr. Nicklaus's name, image and likeness, and enjoining Mr. Nicklaus from "licensing [his] name, image, and likeness for commercial endorsements without the Company's prior written consent …." NYSCEF No. 247 at 2; NYSCEF No. 246 at 349:7-16; *see also* Compl. ¶ 130. Thus, Mr. Nicklaus's Counts II, III, IV and V all seek relief that would contradict the preliminary injunction.

Because litigation of this action would require adjudication of the same property rights being litigated in the New York Action, application of *Princess Lida* mandatory abstention is required. Accordingly, this factor strongly supports abstention.

*Factor two* also weighs in favor of abstention. Factor two addresses the convenience of the federal forum relative to the physical proximity of the federal forum to the evidence and witnesses in the matter. *See, Am. Bankers Ins. Co. of Fla.*, 891 F.2d at 885. However, as the Supreme Court has held, in the context of considering proper venue, consideration of the convenience of parties and witnesses requires a different analysis "when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,* 571 U.S. 49, 63 (2013) (internal quotation marks and citations omitted). Moreover, engaging in discovery in this action would impose an unnecessary burden given that the New York Action has already involved not only substantial document discovery and depositions, but also a three-day evidentiary hearing on the preliminary injunction.

*Factor three* concerns the avoidance of piecemeal litigation that would be abnormally excessive or deleterious. Given the identical issues presented in the two actions, permitting this action to proceed concurrent with the New York Action would undoubtedly be excessive and deleterious. The actions proceeding together would be excessive given that determinations as to the rights possessed by the Company, and the truthfulness of the allegations made in the New York Action would be ruled upon twice in two distinct venues—presenting the risk of competing rulings. Deference must be afforded to the first-filed action that has progressed farther than this action. *See*, *Ambrosia Coal and Const. Co.*, 368 F.3d at 133.

Moreover, given that the issues of the Company's right to use Mr. Nicklaus's name, image, and likeness and the truthfulness of the Company's allegations in the New York Action are at the heart of both litigations, the danger of conflicting findings as to those issues is also a factor which weighs in favor of conceding jurisdiction to the New York Court. *See Gundogdu v. WDF-4 Wood*

*Harbour Park Owner, LLC*, No. 21-61003-CIV, 2022 WL 2702624, at *7 (S.D. Fla. July 12, 2022) ("third factor "militates strongly in favor of abstention" if litigating "in two separate fora would thus lead to inconsistent decisions, create piecemeal litigation, and encourage future litigants to engage in forum shopping").

      **Factor four,** which considers the order in which the two forums obtained jurisdiction, weighs strongly in favor of abstention. "This factor should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Am. Bankers*, 891 F.2d at 885 (internal quotation marks and citation omitted). Not only did the New York Court obtain jurisdiction over the parties first, but substantial progress has been made in the year since the start of this litigation. The New York Court has already held a three-day evidentiary hearing that resulted in that court's making a preliminary ruling on the parties' rights to Mr. Nicklaus's name, image and likeness. Moreover, at the request of Mr. Nicklaus, the New York Court is currently entertaining further briefing on the issue of the parties' commercial rights to Mr. Nicklaus's name, image and likeness.  *See* Compl. ¶ 132.

      **Factor five** considers whether state or federal law will apply. While there are federal claims in this Federal Action, they are dependent on issues and findings that are more appropriate for consideration by the New York Court.  Mr. Nicklaus's Lanham Act and Florida state law claims depend on the resolution of the issues of who owns the commercial rights to Mr. Nicklaus's name, image and likeness and the truth of the allegations in the New York Action.  The company acquired the exclusive rights to Mr. Nicklaus's name, image and likeness pursuant to the PSA, which is governed by New York law, and the LLC Agreement, which is governed by Delaware law.  *See* NYSCEF No. 113 § 12.15 at 52; NYSCEF No. 114 § 9.17 at 51.  Moreover, the most appropriate forum for determining the truth of the allegations of the New York Complaint is obviously the New York Court, in which the truth of those allegations is slated to be proved or disproved.  Thus, this factor strongly favors abstention.

      **Factor six** considers the adequacy of the state court to protect the parties' rights.  When both forums are adequate to protect the parties' rights, this factor is rendered neutral. *Am. Banker*, 891 F.2d at 886.  There is no reason to conclude that the New York Court is an inadequate forum to protect Mr. Nicklaus's rights.  To the contrary, as Mr. Nicklaus's has alleged, the New York Court has ruled in Mr. Nicklaus's favor on several issues, including granting, in part, his motion to dismiss several claims in the Amended Complaint, and granting his request to issue an Order to

Show Cause why the Preliminary Injunction should not be vacated.  Compl. ¶¶132, 133. Since both this Court and the New York Court are adequate to protect the parties' rights, this factor is neutral.

Finally, in addition to the above six factors, in "considering *Colorado River* abstention, a district court should also be mindful of the potentially vexatious or reactive nature of either the federal or the state litigation." *Freeman v. Wells Fargo Bank, N.A.*, No. 19-CV-80670, 2019 WL 13147405, at *5 (S.D. Fla. Dec. 12, 2019) (internal quotation marks and citations omitted). "Abstaining when litigation is reactive or vexatious furthers the important federal policy of prohibiting forum shopping." *Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1344 (S.D. Fla. 1999). It is apparent that Mr. Nicklaus's is forum shopping, having initiated this action in response to being preliminarily enjoined from using the disputed property by the New York Court—the forum to which Mr. Nicklaus agreed in return for $145 million. Compl., ¶ 130.

Accordingly, with the exception of the sixth factor, which is neutral, all of the *Colorado River* factors favor abstention.  The first, third and fourth factors, in particular, strongly favor abstention, given the New York Court's exercise of jurisdiction over the commercial rights to the Nicklaus IP, the substantial rulings on these issues that the court has already made and the risk of inconsistent rulings if this Court adjudicates the right to the intangible property that is now subject to the New York Action's preliminary injunction and the truth of the allegations of the New York Amended Complaint.  When these factors have favored abstention, this Court has consistently ordered a stay pending resolution of the state action.  *See, e.g., Freeman*; *Paolino v. U.S. Bank, Nat'l Ass'n as Tr. for New Residential Pass-Through Tr. V*, No. 18-60789-CIV, 2018 WL 4409996, at *2–6 (S.D. Fla. July 24, 2018), report and recommendation adopted, No. 18-60789-CIV, 2018 WL 4409875 (S.D. Fla. Sept. 4, 2018); *Burgos v. Suntrust Bank N.A.*, No. 13-21197-CIV, 2014 WL 11880360, at *2–4 (S.D. Fla. Nov. 17, 2014), report and recommendation adopted, No. 13-21197-CIV, 2015 WL 11201189 (S.D. Fla. Jan. 26, 2015); *Popescu v. JP Morgan Chase & Co.*, No. 12-80851-CIV, 2013 WL 5535867, at *1–4 (S.D. Fla. Oct. 7, 2013).

The New York Action is an adequate vehicle for the complete and expeditious resolution of the issues between the parties in the parallel actions. Accordingly, this Court should abstain from exercising jurisdiction and enter a stay of proceedings.

## II.      In the Alternative, This Action Should be Dismissed

If this Court does not stay this action, the Court should dismiss the Complaint on multiple grounds.  First, the Complaint should be dismissed under the doctrine of *forum non conveniens* because Mr. Nicklaus agreed to a forum selection clause that makes the New York Action the only proper venue for his claims.  Second, the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.

### A.      Mr. Nicklaus's Claims Should be Litigated in New York Based on a Valid and Enforceable Forum Selection Clause in the LLC Agreement

The forum selection clause of the LLC Agreement makes clear that the State of New York is the exclusive forum for any litigation between Mr. Nicklaus and the Company. That clause provides that "[e]ach party further agrees that *any action or proceeding brought against the other*, shall be brought *only* in a court of the State of New York, or to the extent permitted by law, in such federal court." NYSCEF No. 114 § 9.18 at 51 (emphasis added).  All claims against the Company should be dismissed on the grounds of *forum non conveniens*.

On a motion to dismiss for improper  venue, "the court may consider matters outside the pleadings …." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004) (internal quotation marks and citation omitted).

"When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013).  As the Eleventh Circuit has explained:

> The presence of a forum selection clause … modifies [traditional *forum non conveniens*] analysis in important ways. "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." Second, [a] binding forum-selection clause requires the court to find that the <u>forum non conveniens</u> private factors entirely favor the selected forum. The Supreme Court has instructed that a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.

*Turner v. Costa Crociere S.P.A.*, 9 F.4th 1341, 1347–48 (11th Cir. 2021) (internal quotation marks and citations omitted). Indeed, "an enforceable forum-selection clause carries near-determinative

weight" under the analysis mandated by the Supreme Court. *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014).

"Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Hindi v. BirdEye, Inc.*, No. 19-CV-61201, 2019 WL 4091425, at *3 (S.D. Fla. Aug. 29, 2019). Mr. Nicklaus cannot make a strong showing that there is anything unfair or unreasonable about enforcing the LLC Agreement's forum selection clause given that he agreed to that provision as a part of a deal that enriched him and his family by more than $145 million. Indeed, this issue has already been decided by the New York Court, which has found that forum selection clause to be valid and enforceable. NYSCEF No. 240; NYSCEF No. 246 at 338.

As signatories to the LLC Agreement, both Mr. Nicklaus and the Company are bound to the unambiguous terms of the forum selection clause. Likewise, as executives of the Company, Messrs. Milstein and O'Brien can enforce this clause. *See*, *Elite Advantage, LLC v. Trivest Fund, IV, L.P.*, 2015 WL 4982997, *7 (S.D. Fla. Aug. 21, 2015) ("[o]fficers, directors, and shareholders of signatories to contracts are sufficiently closely related to the signatories' contract to enable them to enforce the contracts' forum selection clauses"). The Supreme Court has held that when the parties have agreed to a valid and enforceable forum selection clause, "[28 U.S.C.] § 1404(a) and the *forum non conveniens* doctrine provide appropriate enforcement mechanisms." *Atl. Marine Const. Co.*, 571 U.S. at 61.

Application of the *forum non conveniens* doctrine is required in this case because 28 U.S.C. § 1404(a) is limited to transferring cases to another federal court—not a state court. Given the terms of the LLC Agreement, the New York State Court is the only proper forum at this time. The LLC Agreement's forum selection clause explicitly provides that "any action" by Mr. Nicklaus against the Company "shall be brought only in a court of the State of New York," except an action may also be brought in a federal court in New York if it is "permitted by law." NYSCEF No. 114 § 9.18 at 51. Here, however, the New York Action acts as a bar to Mr. Nicklaus's litigating this action in any federal court. As discussed above, the New York Court's exercise of jurisdiction over the commercial rights to Mr. Nicklaus's name, image and likeness "establishes a bar to any other action" regarding the rights to that intellectual "property until the first court's jurisdiction is properly terminated." *Key v. Wise*, 629 F.2d 1049, 1059 (5th Cir. 1980).

Thus, while transfer to a federal court in New York would have been permissible if the New York Action did not exist, the New York Court's exercise of jurisdiction over the intangible rights that were transferred to the Company leaves the New York Action as the only forum permissible under the LLC Agreement's forum selection clause. *See Hindi v. BirdEye, Inc.*, No. 19-CV-61201, 2019 WL 4091425, at *8 (S.D. Fla. Aug. 29, 2019) (a federal court will be considered an adequate alternative forum for purposes of transfer under 28 U.S.C. § 1404(a) if that court can "provide[]for litigation of the subject matter of the dispute" and "can assert jurisdiction over the litigation sought to be transferred") (internal quotation marks and citations omitted).

Accordingly, if this Court does not stay this action, the Court should enforce the LLC Agreement's forum selection clause by dismissing the Complaint under the doctrine of *forum non conveniens*.

**B.   Mr. Nicklaus's Complaint Should be Dismissed for Failure to State a Claim on Which Relief can be Granted**

**1.   Legal Standard for a Motion to Dismiss Under Rule 16(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly,* 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

2.      **Mr. Nicklaus's Claims Alleging False Statements Should be Dismissed**

a.      **The Absolute Immunity Conferred by the Litigation Privilege Bars Mr. Nicklaus's Defamation and Unfair Competition Claims**

"Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007). This "litigation privilege applies in all causes of action, statutory as well as common law." *Id.*, 950 So. 2d at 380–81.

The litigation privilege applies to the alleged false statements contained in the New York Amended Complaint that form the basis of Count I (defamation) and count II (unfair competition). *See* Compl., ¶ 241 ("the Company's Complaint in the New York litigation included false statements"). *See DelMonico v. Traynor*, 116 So. 3d 1205, 1217 (Fla. 2013) (Florida's absolute litigation privilege applies when "the defamatory statements at issue were made either in front of a judicial officer or in pleadings or documents filed with the court or quasi-judicial body."). Where applicable, this immunity bars all causes of action "without qualification as to the nature of judicial proceedings, whether based on common law, statutory authority, or otherwise." *Echevarria,* 950 So. 2d at 384.

The litigation privilege acts as an absolute bar to Mr. Nicklaus's defamation and unfair competition claims.[3] As the Court in *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So.2d 606, 607-08 (Fla 1994) stated:

> Under Florida law, "defamatory statements made in the course of judicial proceedings are ***absolutely privileged***, no matter ***how false or malicious*** the statements may be. Consequently, the torts of perjury, libel, slander, ***defamation***, and similar proceedings that are based on statements made in connection with a judicial proceeding ***are not actionable***. The immunity afforded to statements made during the course of a judicial proceeding extends not only to the parties in a proceeding but to judges, witnesses, and counsel as well."

(internal citations omitted) (emphasis added).

---

[3] *Fariello v. Gavin,* 873 So.2d 1243, 1245 (Fla. 5th DCA 2004) (the litigation privilege may be raised in a motion to dismiss when based on the four-corners of the pleading).

The allegations made in the New York Amended Complaint are afforded immunity as they are part of a judicial proceeding. *See Gandy v. Trans World Computer Tech. Group*, 787 So. 2d 116, 119 (Fla. 2d DCA 2001) ("Florida recognizes that defamatory words published during the course of a judicial or quasi-judicial proceeding are absolutely privileged if they are connected with, or relevant or material to, the cause at hand or subject of inquiry.").

Mr. Nicklaus alleges that a separate "publication" occurred when the Company sent copies of its pleading to the news media. *See Wolf v. Menh*, CV 19-305 (RMC), 2019 WL 3753121, at *3 (D.D.C. Aug. 8, 2019) ("[p]ublication to the media of material that the media was independently entitled to view ... cannot provide a basis for a claim of defamation."), *aff'd on other grounds*, 810 Fed. Appx. 10 (D.C. Cir. 2020). Indeed, a publication to the media of the public complaint does not give rise to defamation as a complaint is a public document, entirely accessible by the media. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006) ("complaint filed in the Southern District of New York is a public document.").

Moreover, the absolute privilege is extended to any alleged transmittal of the Company's pleading to the media as it was a response to media inquiries in relation to *Mr. Nicklaus's* public statements that "he's not constrained by any of the agreements." Compl., ¶ 184. Mr. Nicklaus is a notable "public" figure, who has made public representations relating to both the arbitration he initiated and the New York Action that "he's not constrained by any of the agreements." Compl., ¶¶ 13, 184. The Company received inquiries from the press in relation to Mr. Nicklaus's own statements and, instead of providing a statement, it opted to simply produce an already-public record to avoid ambiguity relative to its position in the ongoing judicial proceeding. *Id.*, ¶ 184; *see also Wright v. Yurko*, 446 So. 2d 1162, 1164 (Fla. 5th DCA 1984) ("[p]arties, witnesses and counsel are accorded absolute immunity as to civil liability to what is said or written in the course of a lawsuit, providing the statements are relevant to the litigation."). Regardless of the whether the Company's public relations firm sent the record to the media, or the media found it on its own, this does not change the fact that the media, and anyone else for that matter, had access to the filing that was made in a judicial proceeding. Therefore, Mr. Nicklaus's allegations that the Company sent its pleading to the media are insufficient to overcome the litigation privilege.

Additionally, Mr. Nicklaus alleges a separate "publication" by the Company's sending of copies of news articles that discussed the Amended Complaint to the Company's clients. *See* Compl., ¶ 192. Initially, the statements made in the articles are not those of the Defendants, even

if they discuss the Amended Complaint and its allegations.  There is no rule that precludes a party to a lawsuit from sharing a news article about the lawsuit with others.

The sharing of the news articles discussing the New York Action are also protected by the litigation privilege because they are "a report on the status of the lawsuit" filed by the Company which is an issue of public interest as it relates to Mr. Nicklaus, a public figure. *See Huszar v. Gross*, 468 So. 2d 512, 515 (Fla. 1st DCA 1985); *see also Gursky Ragan, P.A. v. Association of Poinciana Villages, Inc.*, 314 So.3d 594, 595 (Fla. 3d DCA 2020) ("[i]n determining whether a statement bears some relation or connection with the subject inquiry [of the judicial proceedings], *Florida courts apply a broad standard*") (emphasis added).

This alleged disclosure is protected by the litigation privilege and afforded absolute immunity as it is akin to the facts in *Huszar* where the court found the privilege to apply to "[t]he newspaper article [that] was a report on the status of a lawsuit filed by the Comptroller against Huszar's client, an official action of public interest, including the remarks of Gross, a government attorney involved, relating to the prosecution and possible further action by the Comptroller's office." *Huszar*, 468 So. 2d at 515. The court in *Huszar* explained that "[t]he publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgment of the occurrence reported." *Id.*, (citing to Restatement of Torts (Second), Section 611). Indeed, the news articles reported the allegations in the Amended Complaint in relation to Mr. Nicklaus as a public-figure and as to the recent statements made by Mr. Nicklaus. *See* Compl., ¶¶ 185, 189.

The alleged defamatory statements to the Company's clients are privileged for the additional reason that "[i]n Florida, a publication in regard to business made by one having an interest therein and solely to others having an interest in the business is privileged." *Samara v. Juice Plus+ Co., LLC*, No. 620CV520ORL31EJK, 2020 WL 13389215, at *4 (M.D. Fla. Sept. 9, 2020). While that privilege may be overcome if the plaintiff can show that publication of the statement was made with express malice, that would mean showing the defendant's primary motive was an intent to injure the reputation of the plaintiff. *Id.* The Complaint actually alleges to the contrary, namely that the purpose of such alleged statements was to "hinder [Mr. Nicklaus's] ability to compete with the Company …." Comp. ¶¶ 196, 241.

The alleged false statements to clients that Mr. Nicklaus "needed to have his car keys taken away" cannot serve as a basis for a claim for the additional reason that such statements are mere rhetorical hyperbole, which are not actionable. Compl. ¶ 194. "Although rhetorically hyperbolic statements may at first blush appear to be factual[,] ... they cannot reasonably be interpreted as stating actual facts about their target." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378–79 (S.D. Fla. 2006) (internal quotation marks and citation omitted). "It is for the Court to decide, as a matter of law, whether the complained of words are actionable expressions of fact or non-actionable expressions of pure opinion and/or rhetorical hyperbole." *Id.*, 434 F. Supp. 2d at 1379.

In *Fortson*, the court held that describing someone with colorful phrases, such as calling him a "vacant lot" was not defamatory "because the phrase 'vacant lot' cannot conceivably be read as a statement of fact—that [plaintiff] is what the statement literally describes, an unimproved parcel of real property." 434 F. Supp. 2d at 1383. Similarly, the alleged statement that Mr. Nicklaus "needed to have his car keys taken away" cannot conceivably be read as a statement of fact. Such a statement would be unactionable rhetorical hyperbole.

Count I should also be dismissed for the additional reason of failing to adequately allege the elements of either defamation per se or defamation *per quod* (which requires an explanation of the words used to show that they have a defamatory meaning). A claim of defamation rises to the level of defamation per se "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Aflalo v. Weiner*, No. 17-61923-CIV, 2018 WL 3235529, at *2 (S.D. Fla. July 2, 2018) (internal quotation marks and citation omitted). The Complaint contains no such allegations.

A claim of defamation *per quod* requires a plaintiff "to plead special damages" that proximately resulted from the defamatory statement. *Synergy Billing, LLC v. Priority Mgmt. Grp., Inc.*, No. 617CV00929ORL31DCI, 2017 WL 4922203, at *7 (M.D. Fla. Oct. 31, 2017). "Special damages are actual, out of pocket losses which must be proven by specific evidence as to the time, cause and amount; whereas, general damages encompass the more customary harms inflicted by a defamatory falsehood, such as impairment of reputation and standing in the community." *Falic v. Legg Mason Wood Walker, Inc*., 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004) The Complaint contains no allegations of special damages.

Accordingly, the litigation privilege bars Mr. Nicklaus's defamation and unfair competition claims.  Thus, Counts I and II should be dismissed with prejudice.

> **b.**    **Mr. Nicklaus's Counts II Through V Are Dependent on Mr. Nicklaus's Ownership of Intellectual Property Rights, And Due to An Established Lack of Ownership, Should Be Dismissed**

Mr. Nicklaus asserts claims that are wholly dependent on his owning the rights to commercially exploit his name, image and likeness—i.e., the Nicklaus IP. Those claims are Common Law Unfair Competition (Count II), Violation of Florida Statute §540.08 (Count III), False Statements Intended to Impair Competition in Violation of the Lanham Act (Count IV) and False Endorsement in Violation of the Lanham Act (Count V). Compl. ¶¶ 258, 260 265, 266, 273, 275, 282, 285. Without ownership of that intellectual property, and therefore the ability to use and exploit it, each of these four counts fail and should be dismissed with prejudice.

Mr. Nicklaus and GBI sold and assigned the Nicklaus IP, and other assets, for the significant sum of $145 million in 2007 to the Company. Such sale and assignment are clear upon a review of agreements that are both referenced and incorporated into the Complaint and that have been filed on the public docket of the New York Action. *See*, Compl., ¶ 38. The Eleventh Circuit has held that when considering a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to dismiss to a motion for summary judgment. *Makro Capital of America, Inc. v. UBS AG,* 372 F. Supp. 2d 623 (S.D. Fla. 2005).[4]

Accordingly, this Court may consider the parties' agreements referenced in the Complaint. As discussed above, the PSA and the LLC Agreement clearly transfer the Nicklaus IP to the Company.  The PSA provided that the company was purchasing all of the assets of GBI, including "all of the publicity and related commercial rights held by GBI to use and/or license the use of the endorsement, name, nickname, likeness, signature and/or other identifying characteristics of Jack W. Nicklaus …." NYSCEF No. 113, PSA Annex A, § 15.  GBI warranted that Mr. Nicklaus did not retain any interest in those commercial rights. NYSCEF No. 113, § 4.19 at 25. The parties

---

[4] The Eleventh Circuit has permitted Courts to take judicial notice of records filed on other dockets, because such documents are capable of accurate and ready determination. *Makro Capital of America, Inc. v. UBS AG,* 372 F. Supp. 2d 623, 627 (S.D. Fla. 2005) (citing *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1279-80 (11th Cir. 1999); s*ee also Schafler v. Indian Spring Maintenance Ass'n.,* 139 Fed. Appx. 147, 149 (11th Cir. 2005) (court took judicial notice of orders issued in previous lawsuits finding requirements of *res judicata* met and dismissing complaint); *see also Martin K. Eby Construction Co., Inc. v. Jacobs Civil, Inc.,* 2006 WL 1881359, *1 (M.D. Fla. 2006).

expressly limited the rights being retained by Mr. Nicklaus as being limited to certain personal uses—not commercial uses. NYSCEF No. 113, Schedule 4.10(b) at 24.

In the LLC Agreement, Mr. Nicklaus acknowledged that the Company was acquiring the commercial rights to his name, image and likeness, and agreed the Company was acquiring the right "to, use, exploit, license, assign, sell [and] otherwise transfer the Nicklaus IP," subject to a limited veto by him, which could not be used unreasonably.   NYSCEF No. 114 at 13, § 6.3 at 33; *see also* Compl. ¶ 47. Mr. Nicklaus also agreed that the Company had been formed to acquire and hold GBI's assets "and engag[e] in the businesses of, among other things, golf course design and management, licensing of certain intellectual property . . . and marketing personal service contracts related to the personal endorsement and other publicity rights of [Mr. Nicklaus] . . . ."  NYSCEF No. 114 § 1.4 at 2; *see also* Compl. ¶ 45.

Given these clear statements that the Company was purchasing the commercial rights to the use of Mr. Nicklaus's name, image and likeness, it is not surprising that at the close of the three-day evidentiary hearing the New York Court concluded that the subject "intellectual property rights … were unambiguously conveyed" to the Company in 2007. NYSCEF No. 246 at 340.

To the extent the Complaint alleges that the Company did not hold the rights to the Nicklaus IP, Mr. Nicklaus's allegations conflict with the agreements referenced in the Complaint. In this situation, the documents supersede the allegations.  *See Llauro v. Tony*, 470 F. Supp. 3d 1300, 1314 (S.D. Fla. 2020), *aff'd sub nom. Llauro v. Linville*, 20-12862, 2021 WL 5767935 (11th Cir. Nov. 6, 2021) (when exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern) (internal citations omitted). Thus, Mr. Nicklaus cannot establish any claim that is based on his supposed rights to use the Nicklaus IP.

Accordingly, the following claims should be dismissed.

> c. **Counts II and IV – "False Statements Intended to Impair Competition" Under Common Law Unfair Competition and the Lanham Act – Should Be Dismissed**

To state a claim for unfair competition, Plaintiff must allege (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion. *See Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1212 (M.D. Fla. 2005) (Florida common law), *see also*, *Petmed Express, Inc. v. Medpets.com, Inc.,* 336 F.Supp.2d 1213, 1218 (S.D.Fla.2004) (Lanham Act).

Significantly, however, for the claims for unfair competition to stand, there must be competition. *See King Ranch, Inc. v. King Ranch Contractors, LLC*, 2013 WL 2371246, at *11

24

(M.D. Fla. May 30, 2013) (noting that the competition requirement requires a showing of "similarity in businesses of the parties") (internal citations omitted). As discussed above, Mr. Nicklaus cannot assert claims of unfair competition against the Company on the basis of it's using his name, image, or likeness for commercial purposes or asserting its rights to such usage. As established above, these rights were clearly sold and transferred in exchange for a $145 million payment to GBI for the Mr. Nicklaus's benefit. Thus, Mr. Nicklaus cannot base any claim of unfair competition on the Company's use of Mr. Nicklaus's name, image or likeness. Accordingly, both Counts II and IV should be dismissed with prejudice.

### 3.      Count III – False Endorsement Under Florida Statute §540.08 Should Be Dismissed

Mr. Nicklaus alleges that the Defendants have violated §540.08 (1)(a) and (b) by using his name, image, and likeness for purposes of trade and other commercial and advertising purposes. *See* Compl. 265-66. Florida Statute §540.08 (1)(a) and (b) state:

> (1)   No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by:
>
> (a)   Such person; or
> (b)   Any other person, firm or corporation authorized in writing by such person to license the commercial use of her or his name or likeness

Mr. Nicklaus's allegations simply ignore the fact that he signed the LLC Agreement, in which he authorized the Company to use the Nicklaus IP, subject to a limited veto by him.  In addition, Mr. Nicklaus's closely-held corporation authorized the Company to use the commercial rights to Mr. Nicklaus's name, image and likeness by selling those rights to the Company for $145 million. By accepting this massive payment, Mr. Nicklaus waived any right to assert this claim. *See Nat'l Football League v. Alley, Inc.*, 624 F. Supp. 6, 10 (S.D. Fla. 1983) (holding that plaintiff's contractual consent constituted waiver of his rights under the Florida statute).

If the parties had actually wanted to carve out additional rights from the intellectual property that the Company purchased, such a right would have been expressly included in the lengthy PSA. In fact, there *were* exceptions carved out. Mr. Nicklaus retained rights to his name and likeness as it relates to personal and charitable uses. *See* NYSCEF No. 113, Schedule 4.10(b) at 24. This carveout and the limited veto given to Mr. Nicklaus by the LLC Agreement make it

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX

clear that the Company did purchase the commercial rights to Mr. Nicklaus's name, image and likeness with only a limited carveout in favor of Mr. Nicklaus.  NYSCEF No. 114 at 13, § 6.3 at 33; *see also* Compl. ¶ 47. Accordingly, Mr. Nicklaus's claim for false endorsement under § 540.08, should be dismissed.

### 4. Count V – False Endorsement Under the Federal Lanham Act, 15 U.S.C. §1125(a) – Should Be Dismissed

Similarly, to state a claim for false endorsement under 15 U.S.C. § 1125(a), a plaintiff must plead facts that demonstrate: (1) that it had prior rights to its mark or name and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two. *See Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 106 F.3d 355, 358 (11th Cir.1997).[5]

Here, Mr. Nicklaus cannot establish that it had prior (or current) rights to the mark or name. Mr. Nicklaus's main allegations allege that the Defendants have used Mr. Nicklaus's name and likeness in a way that leads consumers to believe the following: (1) Mr. Nicklaus continues to be associated with the Company; (2) Mr. Nicklaus is associated with 8AM Golf; and (3) Mr. Nicklaus personally endorses certain businesses, goods, and services. Compl. ¶ 282. However, in ¶ 106 of the Complaint, Mr. Nicklaus admits that the Company "has exclusive ownership of the trademarks and service marks which it acquired through the May 2007 Transaction or properly registered with Mr. Nicklaus's consent thereafter."

Despite this admission, Mr. Nicklaus asserts non-existent commercial rights to his name, image and likeness to support his claims.  Such artful pleading, however, is insufficient to pass pleading muster.  For the consideration of the $145 million that was provided to GBI for the benefit of Mr. Nicklaus, the Company retains the rights clearly established in the agreements referenced in the Complaint. Accordingly, Mr. Nicklaus does not have prior (or current) rights to the name, image, likeness or other information he alleges was used, and therefore, this count must be dismissed.

## III. Conclusion

**WHEREFORE**, Defendants, HOWARD P. MILSTEIN, ANDREW W. O'BRIEN and NICKLAUS COMPANIES, LLC, respectfully request this Court enter an order staying the

---

[5] *Tana v. Dantanna's*, 611 F.3d 767, 777 (11th Cir. 2010) ("we have also never recognized a separate claim of false endorsement, distinct from trademark infringement under § 43(a).")

proceedings of the instant action to permit the New York Court to properly continue adjudicating the New York Action, or in the alternative, to dismiss the Complaint for *forum non conveniens*, or in the alternative, to enter an order dismissing all of Mr. Nicklaus's claims with prejudice, and granting any other relief this Court believes is just and proper.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

On May 9, 2023, Counsel for Defendants advised counsel for Plaintiff that they intended to file a motion to stay and a motion to dismiss ("Motion") in response to Plaintiff's Complaint. Plaintiffs noted in the Joint Scheduling Report that they were already preparing an opposition brief to the Motion. *See* ECF No. 24. However, the undersigned believed that the instant Motion fell under the Local Rule 7.1(a)(3) exception for motions to dismiss, therefore, a certification was not initially included.

In light of this Court's Order today denying without prejudice the Motion for lack of compliance with Local Rule 7.1(a)(3) [ECF No. 25], counsel for Defendants conferred with counsel for Plaintiff via email on May 26, 2023 relative to Plaintiff's position on the entire Motion in a good faith effort to resolve the issues raised herein and regarding the relief sought. Plaintiff, through counsel, stated that he opposes the Motion in its entirety and the relief requested herein.

Dated: May 26, 2023

Respectfully submitted,

**COLE, SCOTT & KISSANE, P.A.**
Esperanté Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 383-9200
Facsimile (561) 683-8977

By:  */s/ Justin B. Levine*___
JUSTIN B. LEVINE
Florida Bar No. 106463
LIZZA C. CONSTANTINE
Florida Bar No. 1002945
TRE'ANA L. THOMPSON
Florida Bar No. 1031361

and

**CONSTANTINE CANNON LLP**
335 Madison Avenue, Fl. 9
New York, NY 10017
Tel: 212-350-2700
Fax: 212-350-2701

GARY J. MALONE (*pro hac vice*)
gmalone@constantinecannon.com
ROBERT L BEGLEITER (*pro hac vice*)
rbegleiter@constantinecannon.com
TALINE SAHAKIAN (*pro hac vice*)
tsahakian@constantinecannon.com
ANKUR KAPOOR (*pro hac vice*)
akapoor@constantinecannon.com
JANICE JOHNSON (*pro hac vice*)
jjohnson@constantinecannon.com

*Counsel for Defendants Howard P. Milstein,*
*Andrew W. O'Brien, and Nicklaus Companies, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing document was served on May 26, 2023,

via the Court's CM/ECF filing system to all recipients registered to receive notices of electronic

filings generated by CM/ECF for this case.

## SERVICE LIST

**STEARNS WEAVER MILLER WEISSLER**
**ALHADEFF & SITTERSON, P.A.**

150 West Flagler Street, Suite 2200
Miami, Florida 33131
Phone: (305) 789-3200
Fax: (305) 789-3395

Eugene E. Stearns
Fla. Bar No. 0149335
estearns@stearnsweaver.com

Matthew Buttrick
Fla. Bar No. 0176028
mbuttrick@stearnsweaver.com

Albert D. Lichy
Fla. Bar No. 94272
alichy@stearnsweaver.com

Cecilia D. Simmons
Fla. Bar. No. 469726
csimmons@stearnsweaver.com

Adrienne Love
Fla. Bar. No 21835
alove@stearnsweaver.com

*Attorneys for Plaintiff Jack W. Nicklaus*