## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO.: 23-CV-80764-RLR

JACK W. NICKLAUS,

      Plaintiff,

v.

HOWARD P. MILSTEIN, ANDREW W. O'BRIEN,
and NICKLAUS COMPANIES, LLC

      Defendants.

_____/

### DEFENDANTS', HOWARD P. MILSTEIN, ANDREW W. O'BRIEN, AND NICKLAUS COMPANIES, LLC, REPLY IN SUPPORT OF THEIR MOTION TO STAY PROCEEDINGS OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT

**COLE, SCOTT & KISSANE, P.A.**
Justin B. Levine (Bar No. 106463)
Lizza C. Constantine (Bar No. 1002945)
Tre'Ana L. Thompson (Bar No. 1031361)
Esperanté Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 383-9200
Facsimile (561) 683-8977

**CONSTANTINE CANNON LLP**
335 Madison Avenue, Fl. 9
New York, NY 10017
Tel: 212-350-2700
Fax: 212-350-2701
Gary J. Malone (*pro hac vice*)
Robert L. Begleiter (*pro hac vice*)
Taline Sahakian (*pro hac vice*)

*Counsel for Defendants, Howard P. Milstein,
Andrew W. O'Brien, and Nicklaus Companies, LLC*

Dated: July 7, 2023

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 3

    I.    Mandatory Abstention is Required Under the *Princess Lida* Doctrine ............................. 3

    II.   The *Colorado River* Factors Support Abstention ............................................................ 5

        A.   The New York Action and This Action Are Parallel Actions ........................................... 5

        B.   Assumption of Jurisdiction Over Property Supports Abstention .................................... 6

        C.   The Forum Selection Clauses Support Abstention ........................................................ 7

        D.   The Risk of Piecemeal Litigation Supports Abstention ................................................. 8

        E.   The Progress of the New York Action Supports Abstention ........................................... 8

        F.   The State Laws at Issue Support Abstention.................................................................. 8

        G.   The Reactive and Vexatious Nature of This Action Supports Abstention...................... 9

    III.   The LLC Agreement's Forum Selection Clause is Binding Because All of Plaintiff's Claims Arise Out of or Relate to the LLC Agreement.............................................................. 9

    IV.   Each of Plaintiff's Claims Fails to State a Viable Cause of Action.............................. 11

        A.   The Litigation Privilege Applies ................................................................................... 11

        B.   The Defamation Claim Fails as a Matter of Law .......................................................... 12

        C.   The Claims Based on Mr. Nicklaus's Rights to His Name are Not Viable .................. 14

CONCLUSION..................................................................................................................... 15

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*40235 Washington St. Corp. v. Lusardi*, 976 F.2d 587 (9th Cir. 1992)......................................... 7

*AIDS Healthcare Found., Inc. v. Carrel*, No. 15-CV-21546-KMW, 2016 WL 11528922 (S.D. Fla. June 29, 2016) ................................................................................................................. 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 13

*Atlantic Games of Delray, LLC v. Atlantic Games, LLC*, 2015 WL 12672725 (S.D. Fla. June 17, 2015)............................................................................................................................... 5

*Ball v. D'Lites Enterprises, Inc*., 65 So. 3d 637 (Fla. 4th DCA 2011). ................................. 11, 12

*Block v. First Blood Assocs*., 691 F. Supp. 685 (S.D.N.Y. 1988). ................................................ 12

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)........................................................ 5

*Bracken v. DASCO Home. Med. Equip., Inc.*, No. 1:12–CV–892, 2013 WL 3275479 (S.D. Ohio June 27, 2013) ............................................................................................................... 10

*Bridge C.A.T. Scan Associates v. Ohio-Nuclear Inc.*, 608 F. Supp. 1187 (S.D.N.Y. 1985)......... 12

*CA, Inc. v. Ingres Corp*., No. CIV. A. 4300-VCS, 2009 WL 4575009 (Del. Ch. Dec. 7, 2009).. 10

*Coffee v. Stolidakis*, No. 221CV02003ARTEJY, 2022 WL 2533535 (D. Nev. July 6, 2022) ..... 12

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).................... 5, 6

*D'Annunzio v. Ayken, Inc.*, 876 F.Supp.2d 211 (E.D.N.Y 2012) ................................................. 12

*Dibble v. Avrich*, No. 14-CIV-61264, 2014 WL 6632629 (S.D. Fla. Nov. 21, 2014)................. 13

*Dyno v. Dyno*, No. 20-3302, 2021 WL 3508252 (3d Cir. Aug. 10, 2021) ...................................... 6

*Emke v. Compana LLC*, No. CIV A 306CV1416-O BH, 2009 WL 1838976 (N.D. Tex. June 22, 2009)................................................................................................................................. 4

*Est. of Levin v. Wells Fargo Bank, N.A.*, No. CV 21-420 (JEB), 2023 WL 3750577 (D.D.C. June 1, 2023) .......................................................................................................................... 4

*Estate of Young v. Royal Caribbean Cruises, Ltd.*, No. 10-23181-CIV-UNGARO, 2010 WL 11553433 (S.D. Fla. Dec. 10, 2010) ......................................................................... 7, 8

*Falic v. Legg Mason Wood Walker, Inc.*, 347 F.Supp.2d 1260 (S.D. Fla. 2004) ...................... 13

*Fed USA Franchising, Inc. v. Merille, Inc.*, No. 812CV02416SCBTGW, 2013 WL 12155944 (M.D. Fla. Feb. 21, 2013) ......................................................................................... 5

*Freeman v. Wells Fargo Bank, N.A.*, 2019 WL 13147405 (S.D. Fla. Dec. 12, 2019) ................... 9

*Fridovich v. Fridovich*, 598 So.2d 65 (Fla. 1992) ..................................................................... 11

*Fuji Photo Film U.S.A., Inc. v. McNutty*, 669 F.Supp.2d 405 (S.D.N.Y 2009) ........................... 12

*Grippa v. Rubin*, No. 4:20CV457-MW/MAF, 2023 WL 3683977 (N.D. Fla. Mar. 22, 2023) .... 12

*Horsley v. Ribera*, 292 F.3d 695 (11th Cir. 2002) ..................................................................... 13

*Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127 (11th Cir. 2013) ................................... 3

*Key v. Wise*, 629 F.2d 1049 (5th Cir. 1980) ................................................................................ 5

*Michel v. NYP Holdings, Inc*., 816 F.3d 686 (11th Cir. 2016) ................................................... 13

*Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456 (1939)* ................................. 2, 3, 4, 6

*Regions Bank v. Am. Leisure Resorts, Inc.*, No. 13-20638-CIV, 2013 WL 12164644 (S.D. Fla. June 28, 2013) ......................................................................................................... 7

*Sander v. JPMorgan Chase Bank, N.A.*, No. 22 CV 1543 (VB), 2023 WL 1866887 (S.D.N.Y. Feb. 9, 2023) ..................................................................................................... 7

*Schmidt v. Verascomp, Inc.*, No. 08-60084-CIV, 2008 WL 11331749 (S.D. Fla. July 30, 2008) .. 3

*Sec. & Exch. Comm'n v. Harbor City Cap. Corp.*, No. 6:21-CV-694-CEM-DCI, 2023 WL 1105282 (M.D. Fla. Jan. 30, 2023) ........................................................................... 4

*Selton v. U.S. Bank Trust Nat. Assn.*, 124 F.Supp.3d 1245 (M.D. Fla. 2015). ............................. 4

*Stewart v. Sun Sentinel Co.*, 695 So. 2d 360 (Fla. 4th DCA 1997) ............................................ 11

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX

*The Applied Underwriters, Inc. v. Lara*, 37 F.4th 579 (9th Cir. 2022)............................................ 4

*Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018)........................................................... 13

*U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805 (11th Cir. 2015)........................................... 14

**Statutes**

N.Y. Civil Rights Law § 74 ....................................................................................... 12

**Other Authorities**

*Jack Nicklaus on board with historic PGA Tour-LIV Golf merger: 'Good for the game of golf'*
(Jun. 6, 2023).................................................................................................... 14

Wright & Miller, 13F Fed. Prac. & Proc. Juris. § 3631 (3d ed.). .................................................. 4

Defendants, HOWARD P. MILSTEIN, ANDREW W. O'BRIEN, and NICKLAUS COMPANIES, LLC ("the Company") (collectively the "Defendants"), by and through the undersigned counsel, file this Reply in Support of Defendants' Motion to Stay Proceedings or, in the Alternative, to Dismiss the Complaint (the "Motion"). In support, Defendants state as follows.

## PRELIMINARY STATEMENT

Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Stay Proceedings, or, in the Alternative, to Dismiss the Complaint (the "Opposition" or "Oppos.") unintentionally reveals just how inextricably intertwined this action is with the New York Action[1], in which Plaintiff, Jack W. Nicklaus ("Mr. Nicklaus") and the Company have been litigating substantially the same issues Mr. Nicklaus has repackaged into his claim in this action. Confronted with the Motion's showing that Mr. Nicklaus seeks to litigate in a second forum not only the property rights that are currently subject to a preliminary injunction in the New York Action—but also the truthfulness of the very allegations in that action—the Opposition resorts to ignoring controlling law and mischaracterizing the record.

For example, as the Motion shows, in the New York Action the parties are litigating their rights to intellectual property they have labelled as the "Nicklaus IP," which they have defined as "mean[ing] the name, photograph, likeness, and image of [Mr. Nicklaus] and the [Nicklaus]-related brands and trademarks now existing or owned by or licensed to the Company in the future, including, but not limited to, Nicklaus, Jack Nicklaus, Jack Nicklaus Signature and Golden Bear." NYSCEF No. 114 at 13. *See* Motion at 5. The New York Court has already assumed jurisdiction of this intangible property by entering a preliminary injunction restricting Mr. Nicklaus's use of this intellectual property without the Company's prior written consent.  NYSCEF No. 247.

Notwithstanding the New York Court's assumption of jurisdiction over this intellectual property, in this action Mr. Nicklaus seeks inconsistent injunctive relief that would restrict the Company's use of the Nicklaus IP and limit its rights to license the use of "Mr. Nicklaus' name, image, and likeness …" Complaint ¶¶ 266, 270, 282, 288.

Despite the obvious problems that would arise if this Court and the New York Court issued contradictory rulings over who has control of the Nicklaus IP, Mr. Nicklaus argues that courts will not abstain from assuming jurisdiction over intangible property when another court has already

---

[1] Capitalized terms have the same meanings given to them in Defendants' Motion. D.E. 27.

assumed jurisdiction of that property. According to the Opposition, courts will abstain only when another court has assumed jurisdiction over *real* property. Oppos. at 7.

Amazingly, the Opposition simply ignores—not even mentioning—the leading Supreme Court decision on this issue, which is cited in the Motion, *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939). Motion at 11-13. Contrary to Mr. Nicklaus's argument, the *Princess Lida* doctrine—which courts have followed faithfully for the past eight decades— mandates that when the rights to property—whether real or intangible—are at issue in two actions, the court first exercising jurisdiction over that property has exclusive jurisdiction.

The Opposition also mischaracterizes the record in the New York Action. For example, the Opposition asserts that "the Company's CEO at the time of the underlying events has admitted under oath that the statements in question [which form the basis for the defamation claim in this action] were untrue …." Oppos. at 3. Not surprisingly, the Opposition does not cite any actual testimony because the assertion is false—the former CEO never testified that the statements were untrue.

In an apparent effort to cast doubt on the continuation of the New York Action's preliminary injunction, the Opposition claims that the New York Court issued an Order to Show Cause why the injunction should not be vacated after reviewing NYSCEF No. 324, a document that the Opposition quotes misleadingly. Oppos. at 2.  This claim is also false. The New York Court issued the Order to Show Cause on April 12, 2023, to permit both sides to submit additional evidence regarding the preliminary injunction. The document—NYSCEF No. 324—that the Opposition falsely implies caused the New York Court to issue the order was one of the many pieces of evidence submitted—by the Company—on May 24, 2023, more than a month later, in further support of the injunction.

Mr. Nicklaus's mischaracterizations of the events of the New York Action further demonstrate why this Court should stay this action. Mr. Nicklaus is essentially seeking to litigate the New York Action in this Court. Such tactics seek both to interfere with the exclusive jurisdiction of the New York Court over the Nicklaus IP and to embroil this Court into making contradictory rulings.  This Court should reject such tactics and stay this action.

If the Court does not stay the case, the Complaint should be dismissed in its entirety because its allegations are insufficient as a matter of law. Defendants respectfully request that this Court grant their Motion to Stay Proceedings or, in the Alternative, to Dismiss the Complaint.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX

## ARGUMENT

### I.   Mandatory Abstention is Required Under the *Princess Lida* Doctrine

As Defendants showed in their Motion, under the controlling precedent of *Princess Lida* and its progeny, when the ownership of property is at issue in two actions, the first court assuming jurisdiction has exclusive jurisdiction over the property, and the second court should abstain. Motion at 11-13.

Confronted with the controlling precedent of the *Princess Lida* doctrine (also known as the prior exclusive jurisdiction doctrine), Mr. Nicklaus chose to ignore it—not even attempting to distinguish *Princess Lida*. Instead, Mr. Nicklaus argues that the principle that courts should abstain when another court has assumed jurisdiction over property applies only to real—not intangible—property. Oppos. at 7. Mr. Nicklaus constructs this argument by cherry-picking quotes from inapposite decisions in which the *Princess Lida* doctrine was not applicable because the first court had not assumed jurisdiction over any property—either real or intangible.

Mr. Nicklaus cites *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1141 (11th Cir. 2013), a case in which the court did note that no real property was at issue, but based its holding that the district court had correctly declined to abstain on the fact that neither it nor the state court "had assumed jurisdiction over *any property*." (Emphasis added). Similarly, Mr. Nicklaus cites *Schmidt v. Verascomp, Inc.*, No. 08-60084-CIV, 2008 WL 11331749 (S.D. Fla. July 30, 2008), a case in which trademark rights were at issue, but neither of the two courts had assumed jurisdiction over those trademark rights. That court declined to abstain, inter alia, because "there has been no assumption of property in the two parallel cases." *Id.* at *2. Given that the *Princess Lida* doctrine comes into play when the first court has actually exercised jurisdiction over the property at issue, Mr. Nicklaus's authorities are inapposite.

Mr. Nicklaus's argument that courts abstain from jurisdiction only when the prior court has assumed jurisdiction over real property is simply frivolous, given that the leading case on the doctrine—*Princess Lida*—did not involve real property. In *Princess Lida*, the Court held that a federal court "must yield" to a state court, which had acquired exclusive jurisdiction by assuming jurisdiction over the subject of the two suits—administration of a trust. 305 U.S. at 466. Thus, it is a matter of hornbook law that the *Princess Lida* doctrine applies "in all cases involving a specific piece of property, real or personal (including various forms of intangible property)" over which a

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX

prior court "has obtained possession, custody, or control ...." Wright & Miller, 13F Fed. Prac. & Proc. Juris. § 3631 (3d ed.).

As one court has explained, *Princess Lida* is a doctrine of "mandatory abstention" that applies to quasi in rem actions, which are actions in which "the presiding court must have a substantial measure of control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought," and includes "not only cases where property has been actually seized under judicial process, but also cases brought to marshal assets, administer trusts ... liquidate estates, and ... suits of a similar nature." *Selton v. U.S. Bank Trust Nat. Assn.*, 124 F.Supp.3d 1245, 1250-51 (M.D. Fla. 2015).

Accordingly, courts have consistently held that when another court has already assumed jurisdiction over intangible property, that prior court has exclusive jurisdiction. *See, e.g., Sec. & Exch. Comm'n v. Harbor City Cap. Corp.*, No. 6:21-CV-694-CEM-DCI, 2023 WL 1105282, at *2 (M.D. Fla. Jan. 30, 2023) (*Princess Lida* doctrine "is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property") (internal quotation marks and citation omitted).

By issuing the preliminary injunction, the New York Court has already exercised jurisdiction over the Nicklaus IP.  Among other things, the preliminary injunction enjoins Mr. Nicklaus from "licensing Mr. Nicklaus's name, image, and likeness for commercial endorsements without the Company's prior written consent ...."  NYSCEF No. 247 at 2. Thus, the New York Action has prior exclusive jurisdiction. *See, e.g., Emke v. Compana LLC*, No. CIV A 306CV1416-O BH, 2009 WL 1838976, at *4 (N.D. Tex. June 22, 2009) ("[i]n the context of quasi in rem jurisdiction over an intangible such as a corporation or domain name, assumption of jurisdiction entails affirmative steps, such as use of injunctive power or determination of substantive motions").

Application of the *Princess Lida* doctrine requires that this Court abstain because "it is a mandatory jurisdictional limitation," not a "mere discretionary abstention rule."  *Est. of Levin v. Wells Fargo Bank, N.A.*, No. CV 21-420 (JEB), 2023 WL 3750577, at *8 (D.D.C. June 1, 2023) (internal quotation marks and citation omitted). *See also The Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 591 (9th Cir. 2022) ("where one court first takes proper in rem jurisdiction over a

4

res, another court is precluded from exercising its jurisdiction over the same res") (internal quotation marks and citation omitted); *Key v. Wise*, 629 F.2d 1049, 1059 (5th Cir. 1980) (under *Princess Lida*, "[t]he  assumption of jurisdiction over an action in rem establishes a bar to any other action in rem or quasi in rem respecting the same property until the first court's jurisdiction is properly terminated").[2]

## II.     The *Colorado River* Factors Support Abstention
### A.     The New York Action and This Action Are Parallel Actions

Mr. Nicklaus argues that the abstention doctrine of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, (1976), is inapplicable because the parties and claims in this action and the New York Action are not identical.  Mr. Nicklaus misapprehends the law.

Contrary to Mr. Nicklaus's suggestion, parties do not need to be completely identical for proceedings to be considered parallel. While this action includes two individual defendants that are not named in the New York Action, they are executives of the Company. Even if one of the two counts in the New York Action is against an entity not named in the instant action ("GBI"), that corporate defendant is owned and controlled by Mr. Nicklaus. As a matter of law, the parties are therefore substantially similar and overlapping. *See*, e.g., *Atlantic Games of Delray, LLC v. Atlantic Games, LLC*, 2015 WL 12672725, at *2-3 (S.D. Fla. June 17, 2015) ("state and federal cases need not share identical parties and issues to be considered parallel").

Proceedings are considered parallel "when issues in a federal suit are inextricably intertwined with issues contained in a concurrent state suit." *Fed USA Franchising, Inc. v. Merille, Inc.*, No. 812CV02416SCBTGW, 2013 WL 12155944, at *2 (M.D. Fla. Feb. 21, 2013) (internal quotation marks and citation omitted).

For more than the past year, in the New York Action, Mr. Nicklaus and the Company have been litigating the issues of the extent of the Company's rights as owner of the Nicklaus IP and the extent to which Mr. Nicklaus retained interests in the Nicklaus IP after selling those intangible rights and other assets to the Company for $145 million in 2007.  The New York Court has already had substantial proceedings on those issues, including a three-day evidentiary hearing that confirmed, on a preliminary basis, the Company's rights and resulted in the New York Court's preliminary injunction, which bars Mr. Nicklaus from "from "licensing [his] name, image, and

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the Fifth Circuit issued before September 30, 1981.

COLE, SCOTT & KISSANE, P.A.
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX

likeness for commercial endorsements without the Company's prior written consent …."
NYSCEF No. 247 at 2.

As Defendants showed in the Motion, Counts II through V of the Complaint in this action similarly raise issues of the extent of the Company's rights as owner of the Nicklaus IP and the extent to which Mr. Nicklaus retained interests in the Nicklaus IP after selling those intangible rights to the Company. Mr. Nicklaus even acknowledges that his claims raise issues of the parties' "right[s] with respect to the use of his name, image, and likeness …."  Oppos. at 26.

Moreover, although Mr. Nicklaus argues that the truth of the Company's allegations in the New York Action "is not an issue in the New York Action," that argument is frivolous.  Oppos. at 2. In order to prove its claims in the New York Action, the Company will seek to prove the truth of its allegations. In this action, Mr. Nicklaus bases his claims of defamation and unfair competition on those very allegations.  So if this action proceeds, the Company will once again seek to prove the truth of those allegations as a defense.

This action and the New York Action are parallel, given that a determination in the New York Action could resolve all issues pending in the instant action. If these parallel proceedings continue at the same time, there is a substantial risk of contradictory rulings.

### B.     Assumption of Jurisdiction Over Property Supports Abstention

Mr. Nicklaus argues that the first *Colorado River* factor—whether one of the courts has assumed jurisdiction over property—is not present because intangible—not real—property is at issue.  Mr. Nicklaus misconstrues both the principle and its importance.

As discussed above, under the *Princess Lida* doctrine, when one of the courts has assumed jurisdiction over property—either real or intangible—that court is considered to have exclusive jurisdiction. Given that this doctrine of prior exclusive jurisdiction is mandatory, not permissive, courts often do not engage in the *Colorado River* analysis once it is determined that the *Princess Lida* doctrine is applicable. *See, e.g., Dyno v. Dyno*, No. 20-3302, 2021 WL 3508252, at *2 (3d Cir. Aug. 10, 2021) (*Princess Lida* doctrine is a "mechanical rule" that "prevents a court in which an action is filed from exercising jurisdiction when a court in a previously filed action is exercising control over the property at issue and the second court must exercise control over the same property in order to grant the relief sought") (internal quotation marks and citation omitted); *Regions Bank v. Am. Leisure Resorts, Inc.*, No. 13-20638-CIV, 2013 WL 12164644, at *2 (S.D. Fla. June 28,

2013) (under *Princess Lida* doctrine "[t]he first court to assume control of the res exercises exclusive subject matter jurisdiction").

When courts do consider the *Princess Lida* doctrine in the context of the *Colorado River* analysis, they treat the applicability of the *Princess Lida* doctrine as dispositive and requiring abstention. *See, e.g.*, *40235 Washington St. Corp. v. Lusardi*, 976 F.2d 587, 588–89 (9th Cir. 1992) ("the first prong of the *Colorado River* abstention test is dispositive" because "[i]n proceedings in rem or quasi in rem, the forum first assuming custody of the property at issue has exclusive jurisdiction to proceed"); *Sander v. JPMorgan Chase Bank, N.A.*, No. 22 CV 1543 (VB), 2023 WL 1866887, at *5 (S.D.N.Y. Feb. 9, 2023) ("[t]he first [*Colorado River*] factor, whether the dispute involves a res over which either court has assumed jurisdiction, is dispositive when both proceedings are in rem and require the courts to take custody of the same res").

Here, the New York Court has already assumed jurisdiction over the Nicklaus IP by entering injunctive relief protecting the Company's rights to use that intangible property and limiting Mr. Nicklaus' rights to use it.  NYSCEF No. 247.  In this action, Mr. Nicklaus seeks to have this Court assume jurisdiction over that same intangible property by seeking injunctive relief that would limit the Company's rights to license the use of "Mr. Nicklaus' name, image, and likeness …."  Complaint ¶¶ 266, 270, 282, 288.

Thus, the first prong of the *Colorado River* abstention test is dispositive because the first court exercising jurisdiction of the Nicklaus IP—the New York Court—has exclusive jurisdiction.

## C.    The Forum Selection Clauses Support Abstention

Plaintiff argues that the *Colorado River* analysis is not influenced by the existence of a valid and enforceable forum selection clause. *Oppos.* at 8. He is wrong.  The existence of a valid and enforceable forum selection clause not only influences the forum convenience factor of the analysis, but it also influences another factor, the piecemeal litigation factor, given "the potential for inconsistent interlocutory rulings from both courts." *Estate of Young v. Royal Caribbean Cruises, Ltd.*, No. 10-23181-CIV-UNGARO, 2010 WL 11553433, at *2 (S.D. Fla. Dec. 10, 2010).

The Purchase and Sale Agreement ("PSA") and the LLC Agreement are two contracts that determine the Company's rights as the purchaser of the Nicklaus IP and Mr. Nicklaus's rights in connection with that property. Both of those agreements have forum selection clauses in favor of New York courts, with the LLC Agreement's clause providing for exclusive jurisdiction in New York courts. This action relates squarely to the PSA and the LLC Agreement and their

7

interpretation and is subject to the forum selection clauses in those agreements.  In fact, the New York Court reaffirmed that in denying Mr. Nicklaus's motion to dismiss for *forum non conveniens.* NYCSEF No. 240. Accordingly, factor two of the *Colorado River* doctrine weighs in favor of abstention.

### D.      The Risk of Piecemeal Litigation Supports Abstention

The third factor of the *Colorado River* doctrine also weighs in favor of granting the stay. As noted above, piecemeal litigation is likely to occur when there is a valid and enforceable forum selection clause at issue. *See*, *Estate of Young*, 2010 WL 11553433, at *2. Moreover, the two actions are clearly parallel. Mr. Nicklaus's claims of unfair competition and false endorsement necessarily depend on his rights to the Nicklaus IP, which is at issue in the New York Action. Plaintiff's defamation claim is based upon the very allegations that support the Company's claims in the New York Action. Thus, the third factor of the *Colorado River* analysis supports abstention.

### E.      The Progress of the New York Action Supports Abstention

Mr. Nicklaus argues that the fourth *Colorado River* factor—whether the state action has progressed in ways that warrant abstention—is irrelevant due to the supposed dissimilarities in the proceedings. Oppos. at 9. This argument doubles down on Mr. Nicklaus's inaccurate argument that the proceedings are not parallel.

As discussed above, not only do Mr. Nicklaus's claims in this action raise the same issues as the New York Action, but the New York Court has already made substantial progress in the litigation of those issues. The New York Court has already considered substantial evidence on the issue of the parties' rights to the Nicklaus IP—a central issue to both actions—and made preliminary rulings on the Company's ownership of that intangible property—which are embodied in the preliminary injunction. NYSCEF No. 247. Given the similarities of the two actions and the progress of the New York Action, factor four of the *Colorado River* analysis weighs strongly in favor of abstention.

### F.      The State Laws at Issue Support Abstention

Mr. Nicklaus's argument that Florida law applies simply ignores the extent to which his claims depend on the laws of other states. Oppos. at 9. Mr. Nicklaus's claims depend on the parties' right to the Nicklaus IP. This issue is already being determined in the New York Action and is governed by New York law and Delaware law pursuant to the PSA and LLC Agreement, respectively. NYSCEF No. 113 § 12.15 at 52; NYSCEF No. 114 § 9.17 at 51.  Moreover, the most appropriate forum for determining the truth of the allegations in the New York Complaint is the

New York Court in which the truth of those allegations will be litigated. Thus, factor five of the *Colorado River* analysis strongly favors abstention.

### G.     The Reactive and Vexatious Nature of This Action Supports Abstention

When "considering *Colorado River* abstention, a district court should also be mindful of the potentially vexatious or reactive nature of either the federal or the state litigation." *Freeman v. Wells Fargo Bank, N.A.*, 2019 WL 13147405, at *5 (S.D. Fla. Dec. 12, 2019). Mr. Nicklaus fails to rebut Defendant's showing that this action is vexatious and reactive. Given that this case is premised on allegations the Company made in the New York Action and seeks to restrict the Company's rights to use the Nicklaus IP—which is at the heart of the New York Action—this case is the paradigm of a reactive suit.

The reactive and vexatious nature of this action is exemplified by Mr. Nicklaus's efforts to obtain relief he has been denied in the New York Action. On December 16, 2022, Mr. Nicklaus petitioned the New York Court for an order to show cause in support of an application to supposedly clarify the preliminary injunction by modifying it to state that it does not prohibit him from using his "name, image, and likeness in connection with his golf course design business, appearances at events, or speaking engagements, whether for commercial gain or otherwise." NYSCEF No. 262, at p. 1; *see also* NYSCEF No. 261, at 1-2. Without waiting for a response from the Company, Justice Cohen rejected Plaintiff's arguments, finding that the "order is clear" and did not require clarification. NYSCEF No. 270, at 2.

Having failed to convince the New York Court to take action against the Company, Mr. Nicklaus is now suing the Company in this action, hoping a different court will expand his rights to use his name, image and likeness for commercial purposes. *See* Complaint, ¶¶ 208, 258, 260, 273, 275. This alone speaks to the vexatious nature of the instant action and further supports Defendants' request that the instant proceedings be stayed in favor of the New York Action.

### III.    The LLC Agreement's Forum Selection Clause is Binding Because All of Plaintiff's Claims Arise Out of or Relate to the LLC Agreement.

Mr. Nicklaus argues the LLC Agreement's forum selection clause is inapplicable to his claims on two grounds, both of which are meritless.

First, Mr. Nicklaus argues that forum selection clause's requirement that any action brought by one party against another shall be brought only in a New York Court (NYSCEF No. 114 § 9.18(a) at 51) should be read not literally, but as applicable only to disputes arising out of, or relating to, the agreement.  Mr. Nicklaus cites several cases from other jurisdictions limiting

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX

forum selection clauses based on specific contractual or statutory language.  Oppos. at 13. *See, e.g., Bracken v. DASCO Home. Med. Equip., Inc.*, No. 1:12–CV–892, 2013 WL 3275479, *7 (S.D. Ohio June 27, 2013) (given that agreement's language indicated that contract intended to govern only specific issues relating to the parties' employment relationship, forum selection clause would not be applied to discrimination claims). By contrast, Mr. Nicklaus points to nothing in the LLC Agreement indicating it was not intended to cover disputes such as this one.

Second, while Mr. Nicklaus concedes that what the parties "intended was for disputes 'arising out of or relating to' the LLC Agreement to be litigated in New York," he makes the curious argument that Defendants do not contend that his claims "arise out of or relate to the LLC Agreement" (Oppos. at 14).  Contrary to this argument, Defendants' Motion repeatedly makes that exact point. As Defendants stated, "Mr. Nicklaus's Lanham Act and Florida state law claims depend on the resolution of the issues of who owns the commercial rights to Mr. Nicklaus's name, image and likeness," the rights to which are derived from "the PSA … and the LLC Agreement …." Motion at 14.  Under Delaware law, which governs the LLC Agreement, such claims are covered by the forum selection clause, which broadly applies to all claims that "arise out of or relate to the LLC Agreement." *See, e.g., CA, Inc. v. Ingres Corp*., No. CIV. A. 4300-VCS, 2009 WL 4575009, at *46 (Del. Ch. Dec. 7, 2009), aff'd, 8 A.3d 1143 (Del. 2010) (forum selection clause with "[l]anguage such a[s] 'relate to' or 'arise out of' is to be read broadly").

Moreover, although Mr. Nicklaus argues his claims do not "arise out of or relate to the LLC Agreement" (Oppos. at 14), he contradicts himself a few pages later. On page 26, Mr. Nicklaus effectively concedes his claims depend on construction of the LLC Agreement's allocation of rights between Mr. Nicklaus and the Company.  As Mr. Nicklaus notes, the Company asserts that under the LLC Agreement it owns the Nicklaus IP (defined as certain intellectual property, including rights to Mr. Nicklaus's name, image and likeness), while "Mr. Nicklaus merely has a 'limited veto' right with respect to" that intellectual property. *Id.* at 26.  By contrast, Mr. Nicklaus alleges that "[t]he LLC Agreement provision referenced in the Motion operates to ensure that the Company may not use, license, or otherwise transfer any of the intellectual property defined as the 'Nicklaus IP' – some of which is owned by the Company and some of which is owned by Mr. Nicklaus – "without the prior consent of Mr. Nicklaus." LLC Agreement § 6.3." *Id.*  Mr. Nicklaus then admits that his claims in the Florida Action "expressly allege[] that the

Defendants have used and licensed his name, image and likeness in ways to which he has not consented ….." *Id.*

Since Mr. Nicklaus's claims would require construction of Section 6.3 of the LCC Agreement, they clearly arise out of, or relate to, that agreement and are subject to the parties' undisputed selection of New York courts as the exclusive jurisdiction for such disputes.

## IV. Each of Plaintiff's Claims Fails to State a Viable Cause of Action
### A.     The Litigation Privilege Applies

In the Motion, Defendants showed that Mr. Nicklaus's defamation and unfair competition claims based on allegedly false statements are barred by Florida's litigation privilege, which absolutely protects statements in the course of judicial proceedings. Motion, at 19-21. *See, e.g.*, *Fridovich v. Fridovich*, 598 So.2d 65, 66 (Fla. 1992) ("[t]he law in Florida has long been that defamatory statements made in the course of judicial proceedings are absolutely privileged, and no cause of action for damages will lie, regardless of how false or malicious the statements may be, so long as the statements are relevant to the subject of inquiry"). Although Mr. Nicklaus concedes that the alleged "false statements sued upon were *initially* made during the course of a judicial proceeding" (Oppos. at 14), he argues the absolute privilege should not be applied to Defendant's alleged sending of the New York Complaint to the news media under the authority of *Ball v. D'Lites Enterprises, Inc.*, 65 So. 3d 637, 638 (Fla. 4th DCA 2011).

In *Ball*, however, the plaintiffs did not merely give the complaint to the press. Instead, the defendants made allegedly defamatory comments about the complaint on their website, including that "plaintiffs had violated certain trademarks" and engaged in "a hoax." *Id.* at 638. Given the claim that plaintiffs had made defamatory statements in addition to the complaint's allegations, the appellate court distinguished the leading decision of *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 362-63 (Fla. 4th DCA 1997), which held that publication of a complaint is covered by the absolute privilege. *Ball*, 65 So. 3d at 641.

Significantly, Mr. Nicklaus's argument that *Ball's* limitation of the absolute privilege should be extended to publication of a complaint was rejected by this Court in *AIDS Healthcare Found., Inc. v. Carrel*, No. 15-CV-21546-KMW, 2016 WL 11528922, at *5 (S.D. Fla. June 29, 2016), in holding the absolute privilege applies to a defendant's publication of a complaint:

> [A]s the court in *Ball* recognized, "*Stewart* finds the publication of
> the complaint or those documents which would be public records
> when filed in court would be covered by the judicial absolute

> immunity, because those documents *are* part of the judicial proceeding." *Ball*, 65 So. 3d at 641 (emphasis in original). Accordingly, despite the fact that third party news outlets "picked up" [defendant's] press release …, application of the litigation privilege is appropriate here. *See Stewart*, 695 So. 2d at 362-63; *Ball*, 65 So. 3d at 641.

*See also Grippa v. Rubin*, No. 4:20CV457-MW/MAF, 2023 WL 3683977, at *3 (N.D. Fla. Mar. 22, 2023) (noting that the court in *Ball* "interpret[ed] *Stewart* to hold that the publication of a complaint and its corresponding documents are covered by absolute immunity because those documents 'are part of the judicial proceeding'").

Although Mr. Nicklaus concedes that Florida law applies to his defamation claims, he claims that circulation of the New York Complaint would not be privileged under New York law, citing *Bridge C.A.T. Scan Associates v. Ohio-Nuclear Inc.*, 608 F. Supp. 1187 (S.D.N.Y. 1985) and *Block v. First Blood Assocs.*, 691 F. Supp. 685 (S.D.N.Y. 1988). Not only are the decisions irrelevant to the application of Florida law to the alleged defamation, but Mr. Nicklaus is mistaken about the state of New York law.  Subsequent decisions have held that circulation of judicial filings to news media is protected under N.Y. Civil Rights Law § 74, which provides an "absolute" privilege that "is not defeated by the presence of malice or bad faith." *Sheindlin v. Brady*, No. 21-CV-1124 (LJL), 2022 WL 992919, at *3 (S.D.N.Y. Mar. 31, 2022) (internal quotation marks and citations omitted). Thus, "[e]ven if [a reporter] had been passed a copy of the complaint by [defendant] …, that would not subject [defendant] to liability for [reporter's] reporting of it." *Id.* at *4.  *Accord D'Annunzio v. Ayken, Inc.*, 876 F.Supp.2d 211, 220 (E.D.N.Y 2012); *Fuji Photo Film U.S.A., Inc. v. McNutty*, 669 F.Supp.2d 405, 415 (S.D.N.Y 2009).

**B.    The Defamation Claim Fails as a Matter of Law**

In addition to being barred by Florida's litigation privilege, Mr. Nicklaus's defamation claims are insufficiently pled as a matter of law.

As Defendants showed in the Motion, the alleged defamatory statements about Mr. Nicklaus needing to have his car keys taken away and having dementia are treated as rhetorical hyperbole under Florida law. In response, Mr. Nicklaus cites a case decided under Nevada law that held that alleged statements that plaintiff "was stealing from the business" and "was diagnosed with and suffering from early onset dementia" were sufficient to withstand a motion to dismiss because they implied verifiable facts, including that plaintiff "was diagnosed with a certain

medical condition. *Coffee v. Stolidakis*, No. 221CV02003ARTEJY, 2022 WL 2533535, at *6 (D. Nev. July 6, 2022).

By contrast, the statements alleged by Mr. Nicklaus do not imply that he had received any medical diagnosis—they are merely hyperbolic statements that criticize him for poor judgment. Such statements are classic rhetorical hyperbole that Florida courts treat as unactionable opinion as a matter of law. *See, e.g., Turner v. Wells*, 879 F.3d 1254, 1266 (11th Cir. 2018) (finding that conclusions of "inappropriate" and "poor judgment" were pure opinion and nonactionable); *Horsley v. Ribera*, 292 F.3d 695, 702 (11th Cir. 2002) ("In determining whether [the defendant's] statement is entitled to protection as rhetorical hyperbole, we must consider the circumstances in which the statement was expressed").

Mr. Nicklaus's allegation of a defamation *per quod* claim similarly fails as he seeks unspecified compensatory damages in an amount to be determined at trial. "Special damages are actual, out of pocket losses which must be proven by specific evidence as to the time, cause and amount; whereas, general damages encompass the more customary harms inflicted by a defamatory falsehood, such as impairment to reputation and standing in the community*.*" *Falic v. Legg Mason Wood Walker, Inc.*, 347 F.Supp.2d 1260, 1268 (S.D. Fla. 2004). Plaintiff's claim that the allegedly false statements "caused harm to his reputation and his ability to compete with the Company for business" amounts to a claim for damages which are indeterminate. Complaint, ¶ 251; *see also, Dibble v. Avrich*, No. 14-CIV-61264, 2014 WL 6632629, at *4 (S.D. Fla. Nov. 21, 2014) ("[a] claim for indeterminate damages is defined as a claim that includes an unspecified demand for damages"). Beyond conclusory and generic allegations of "harm," Plaintiff has not presented a single allegation of specific instance of harm or injury, *i.e.*, losing a potential deal, as a result of any such alleged defamatory statements. The specificity required to plead special damages is lacking in Mr. Nicklaus's defamation *per quod* claim and thus it is legally insufficient.

Mr. Nicklaus's defamation claims also fail as implausible given his own undisputed statements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Michel v. NYP Holdings, Inc*., 816 F.3d 686, 701–02 (11th Cir. 2016) ("application of the plausibility pleading standard makes particular sense when examining public figure defamation suits"). The crux of Plaintiff's defamation claim is that any alleged association with LIV Golf would harm his reputation because of his association with the PGA. *See*, Complaint, ¶¶ 250-251. But LIV and the PGA are now seeking to merge. Mr.

Nicklaus has since done an about-face by publicly supporting the merger, stating this "arrangement … is good for the game of golf."[3] Plaintiff cannot have it both ways, publicly complimenting the PGA's association with LIV while claiming any association with LIV is defamatory.

### C.    The Claims Based on Mr. Nicklaus's Rights to His Name are Not Viable

As Defendants show in their Motion, Counts II through V are all dependent on whether Mr. Nicklaus owns the rights to commercially exploit his name, image and likeness. Motion at 23-24. Mr. Nicklaus's argument actually confirms that he has not asserted any viable claim that could be based on his ownership of the rights to the Nicklaus IP.

Mr. Nicklaus concedes that the Company has the right to commercially exploit his name, image and likeness, subject to the provisions of Section 6.3 of the LLC Agreement (Oppos. at 26), which provides that the Company may use those rights unless Mr. Nicklaus withholds his consent—which "consent will not be unreasonably withheld"—in a "*written* objection." NYSCEF No. 116 § 6.3 at 33 (emphasis added). Mr. Nicklaus also points out that Section 6.3 permits him to withhold "his consent if the proposed use, licensing, or transfer [of the Nicklaus IP] 'could reflect negatively upon the character, honesty, integrity, morality, business acumen, or abilities or otherwise diminish or conflict with the reputation or public image of [him].'" Oppos. at 26 (quoting Section 6.3). Yet the Complaint does not allege that the Company used the Nicklaus IP in a way that could reflect negatively on his character, etc., or otherwise violate Section 6.3. In fact, the Complaint does not even allege that the Company has used the Nicklaus IP after receiving a reasonable, written objection from Mr. Nicklaus.

The Complaint does not assert any basis for claims based on Mr. Nicklaus's supposed ownership of the Nicklaus IP, given the Company's unambiguous ownership of those rights established by the parties' agreements. The only rights Mr. Nicklaus retained relative to the Nicklaus IP were the rights to his name and likeness as it relates to personal and charitable uses. *See* NYSCEF No. 113, Schedule 4.10(b) at 24. Indeed, as the New York Court concluded after a

---

[3] Scott Thompson, *Jack Nicklaus on board with historic PGA Tour-LIV Golf merger: 'Good for the game of golf'* (Jun. 6, 2023), https://www.foxnews.com/sports/jack-nicklaus-on-board-historic-pga-tour-liv-golf-merger-good-game-golf. The Eleventh Circuit permits courts to take judicial notice of documents such as newspaper articles like that which contains Plaintiff's comments concerning the PGA Tour and LIV Golf merger. *See*, *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811-12 (11th Cir. 2015).

three-day evidentiary hearing, the subject "intellectual property rights … were unambiguously conveyed" to the Company in 2007. NYSCEF No. 246 at 340.

**CONCLUSION**

For the reasons stated above and in Defendants' Motion, Defendants' motion to stay the proceedings or, in the alternative, to dismiss the Complaint should be granted.


Dated: July 7, 2023                    Respectfully submitted,

**COLE, SCOTT & KISSANE, P.A.**
Esperanté Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 383-9200
Facsimile (561) 683-8977

By: */s/ Justin B. Levine*
JUSTIN B. LEVINE
Florida Bar No. 106463
LIZZA C. CONSTANTINE
Florida Bar No. 1002945
TRE'ANA L. THOMPSON
Florida Bar No. 1031361

**CONSTANTINE CANNON LLP**
335 Madison Avenue, Fl. 9
New York, NY 10017
Tel: 212-350-2700
Fax: 212-350-2701

GARY J. MALONE (pro hac vice)
gmalone@constantinecannon.com
ROBERT L BEGLEITER (pro hac vice)
rbegleiter@constantinecannon.com
TALINE SAHAKIAN (pro hac vice)
tsahakian@constantinecannon.com
JANICE JOHNSON (pro hac vice)
jjohnson@constantinecannon.com

*Counsel for Defendants, Howard P. Milstein,*
*Andrew W. O'Brien, and Nicklaus Companies, LLC*

15
**COLE, SCOTT & KISSANE, P.A.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing document was served on July 7, 2023, via the Court's CM/ECF filing system to all recipients registered to receive notices of electronic filings generated by CM/ECF for this case.

## SERVICE LIST

**STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.**

150 West Flagler Street, Suite 2200
Miami, Florida 33131
Phone: (305) 789-3200
Fax: (305) 789-3395

Eugene E. Stearns
Fla. Bar No. 0149335
estearns@stearnsweaver.com

Matthew Buttrick
Fla. Bar No. 0176028
mbuttrick@stearnsweaver.com

Albert D. Lichy
Fla. Bar No. 94272
alichy@stearnsweaver.com

Cecilia D. Simmons
Fla. Bar. No. 469726
csimmons@stearnsweaver.com

Adrienne Love
Fla. Bar. No 21835
alove@stearnsweaver.com

*Attorneys for Plaintiff Jack W. Nicklaus*

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 – WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 – (561) 683-8977 FAX