UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-80764-ROSENBERG

JACK W. NICKLAUS,

    Plaintiff,

v.

HOWARD P. MILSTEIN,
et al.,

    Defendants.
_____/

**ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS AND REMANDING CASE TO STATE COURT**

**THIS CAUSE** is before the Court on the Defendants' Motion to Dismiss at docket entry 27. The Motion is fully briefed and ripe for review. For the reasons set forth below, the Motion is granted and this matter is remanded to state court.

### The Central Issue in this Case

The Defendants removed this case from state court. DE 1. The central issue in dispute is the ownership of certain intangible property rights. As explained by the Plaintiff, a professional golfer, in his Complaint:

> In December 1994, Mr. Nicklaus executed a 'Consent' which gave [a Defendant] a non-exclusive right to use and register Mr. Nicklaus' name, likeness, signature, and nicknames in connection with goods and services. [The Defendant] used that Consent to develop and register a variety of trademarks and service marks which were licensed to third parties for commercial purposes.

DE 1-1 at 5.[1] In his Complaint, the Plaintiff elaborates further on the intangible property that he sold to a Defendant in exchange for $145,000,000:

---

[1] The Plaintiff conveyed the above-referenced rights to a third-party company, owned by him, but the third-party company later sold those rights to Nicklaus Companies, LLC, one of the Defendants in this case. DE 1-1 at 7-8.

> The intangible property included a host of trademarks, service marks, copyrights, patents, and other specified intellectual property, as well as the aforementioned Consent to use and register Mr. Nicklaus' name, likeness, signature, and nicknames in connection with goods and services while the Consent remained in effect.

*Id.* at 8-9.  For the sake of convenience, the Court will refer to the intangible property as simply the "Property."  The Property could be adequately and succinctly summarized as the permission to use the Plaintiff's name and likeness.  The Defendants contend that when the Plaintiff sold the Property, he sold the *exclusive* right to use his name and likeness, while the Plaintiff contends that he sold the *non*-exclusive right. *E.g.,* DE 1-1 at 22.

The exclusive or non-exclusive right to use the Property is at the heart of almost every claim in the Plaintiff's Complaint.  The Court briefly discusses each relevant[2] claim in turn.

### The Plaintiff's Claims Involving the Property

The Plaintiff's Count II is a state law claim labeled "Common Law Unfair Competition."  The Plaintiff alleges, *inter alia*, that the Defendants have engaged in unfair competition by improperly using the Property, and by asserting that the Plaintiff cannot use the Property.  For example, in paragraph 260, the Plaintiff contends that this case must decide whether "Mr. Nicklaus may engage in the business of golf course design on his own and in his own name," and, through that determination, decide whether the Defendants have engaged in unfair competition.

The Plaintiff's Count III, a state law claim, and Count V, a federal law claim, are labeled "False Endorsement."  The Plaintiff contends that when the Defendants use his name and likeness—the Property—that use has not been authorized by the Plaintiff. *Id.* at 61, 64.

The Plaintiff's Count IV, a federal law claim, is labeled "False Statements Intended to Impair Competition."  Like the Plaintiff's state law unfair competition claim, Count II, the Plaintiff

---

[2] The Plaintiff's first count is a state law claim for defamation and is not relevant to the issues addressed in this Order.

contends that the Defendants have improperly denied him the right to engage in the golf business in his own name. *Id.* at 63.

## Prior Litigation Involving the Property

This is not the first time the parties have litigated the exclusive or non-exclusive nature of the sale of the Property. On May 13, 2022, the Defendants instituted *Nicklaus Companies, LLC v. GBI Investors, Inc,* et al., No. 656284/2022, in the New York County Supreme Court. Litigation in that case has been pending, therefore, for more than one year. On December 9, 2022, the New York court granted preliminary injunctive relief against the Defendant in that case, who is the Plaintiff in this case. Very important for the disposition of this case, the preliminary injunction adjudicated the Plaintiff's right to use the Property; the New York court enjoined the Plaintiff in the instant case from: "using or authorizing the use of Transferred Intellectual Property . . . and licensing Mr. Nicklaus's name, image, and likeness for commercial endorsements." *Id.* at DE 247. The property in the New York case is the same as the Property in the instant case, and the Plaintiff has been enjoined from using the Property for commercial purposes.

## The Defendants' Motion to Dismiss

The Defendants have moved for dismissal under what is known as the *Princess Lida* doctrine. *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939). Under that doctrine, "if two suits are *in rem*, **or *quasi in rem***, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the case and grant the relief sought[,] the jurisdiction of the one court must yield to that of the other." *Id.* at 466 (emphasis added). As a leading treatise has explained:

> [A]n abundance of federal decisional law, including an impressive array of Supreme Court decisions, makes it clear that in all cases involving a specific piece of property, real or personal (**including various forms of intangible property**), the federal court's jurisdiction is qualified by the ancient and oft-repeated rule—

>often called the doctrine of prior exclusive jurisdiction—that when a state or federal court of competent jurisdiction has obtained possession, custody, or control of particular property, that authority and power over the property may not be disturbed by any other court.

Wright & Miller, 13F Fed. Prac. & Proc. Juris. § 3631 (3d ed) (emphasis added).

Intellectual property is one of the forms of intangible *quasi in rem* property that courts have found are subject to the *Princess Lida* doctrine. As one court has noted, "trademarks, though intangible and not chattels, constitute genuine and substantial property rights akin to a res." *Holiday Inns of Am., Inc. v. Holiday House, Inc.*, 279 F. Supp. 648, 649 (W.D. Pa. 1968). And, more generally, "courts look to the plaintiffs' requested relief to determine whether an action proceeds *quasi in rem*; if the presiding court must have a substantial measure of 'control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought,' then the action is *quasi in rem*." *Selton v. U.S. Bank Tr. Nat. Ass'n*, 124 F. Supp. 3d 1245, 1250 (M.D. Fla. 2015) (quoting *Princess Lida*, 305 U.S. at 466). Here, the Plaintiff's claims of ownership over the Property would necessarily involve the adjudication of the right to use, or the exclusive or non-exclusive right to use, the Property and, as a result, the Plaintiff's claims would require this Court to exercise *quasi in rem* jurisdiction over the Property. *See Cassity v. Pitts*, 995 F.2d 1009, 1012 (10th Cir. 1993) (stating that a "suit that concerns or determines the *ownership* [or] *control* of a trust qualifies as either an *in rem* or *quasi in rem* proceeding); *State ex rel. S. Brevard Drainage Dist. v. Smith*, 170 So. 440, 441 (1936) ("A proceeding *quasi in rem* is applied to any action between the parties where the first object is to reach and dispose of, or to adjudicate the title or status of, property owned by the parties, **or of some interest claimed by them, and duly put in issue by the allegations of the pleadings therein**." (emphasis added)).

When a court grants injunctive relief over certain property, the court exercises jurisdiction over that property. *See, e.g., Emke v. Compana LLC*, No. 3:06-CV-1416, 2009 WL 1838976, at *4

(N.D. Tex. June 22, 2009) ("In the context of *quasi in rem* jurisdiction over an intangible such as a corporation or domain name, assumption of jurisdiction entails affirmative steps, such as use of injunctive power or determination of substantive motions"); *Weinstock v. Cleary, Gottllieb, Steen & Hamilton*, 815 F. Supp. 127, 129-30, 131 (S.D.N.Y. 1993) (denial of temporary restraining order and rulings on other motions indicated that state court assumed jurisdiction over res of ownership of corporation); *Tweel v. Frankel*, 444 F. Supp. 1071, 1076 (S.D. W. Va. 1978) (state court, through its injunctive powers, had already assumed jurisdiction over corporation).

The Defendants seek dismissal of the Plaintiff's claims because, pursuant to *Princess Lida*, the New York court has assumed exclusive jurisdiction over the Property through its entry of injunctive relief. In his Response, as to this issue, the Plaintiff is silent, even though the *Princess Lida* doctrine is prominent in the Defendants' Motion to Dismiss.[3] The Plaintiff's Response contains no discussion, citation, or acknowledgment of the *Princess Lida* doctrine. For this reason alone, the Court grants the Defendants' Motion to Dismiss as the Defendants' arguments under *Princess Lida* are unrebutted.

In the alternative, the Court grants the Defendants' Motion because the Court can see no reason why the doctrine does not apply: the Property in this case and the New York case is the same, the ownership of the Property forms the core of and is intertwined with all of the Plaintiffs' federal claims (Count IV and Count V), the Plaintiffs' federal claims necessarily would seek adjudication on the rightful ownership and/or the exclusive right to use the Property, and the New York court previously has exercised its jurisdiction by restricting the Plaintiff's use of the Property.

*Princess Lida* abstention is not discretionary, it is mandatory. *E.g., Citibank, NA v. Data Lease Fin. Corp.*, 645 F.2d 333, 338 (5th Cir. 1981). Claims within the doctrine's ambit must be

---

[3] The Plaintiff devotes most of his Response to arguing whether this Court should exercise a different form of abstention, *Colorado River* abstention, and to whether he has stated a claim on which relief can be granted.

dismissed. *E.g., Barbiero v. Kaufman*, No. 13-3973, 580 F. App'x 107, 112 (3d Cir. 2014); *Selton*, 124 F. Supp. 3d at 1254. For all of the foregoing reasons, the Plaintiff's federal claims, Count IV and Count V, are dismissed. The Court declines to exercise supplemental jurisdiction over the Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). Because the Defendants did not remove this action on the basis of diversity jurisdiction (removal was based upon the Plaintiff's federal causes of action) and because the Plaintiff and some of the Defendants appear to be citizens of Florida, the Court can discern no basis for this case to remain in federal court. Accordingly, the Plaintiff's Complaint and remaining claims are remanded to state court.

<u>Ruling</u>

For all of the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Defendants' Motion to Dismiss [DE 27] is **GRANTED IN PART** insofar as the Court dismisses Count IV and Count V. The Court issues no ruling on any remaining claim or any other request for relief in the Motion. The Clerk of the Court shall **REMAND** this matter to the Fifteenth Judicial Circuit, in and for Palm Beach County. The Clerk of the Court shall **CLOSE THIS CASE**. All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 1st day of August, 2023.

Copies furnished to:  
Counsel of record

ROBIN L. ROSENBERG  
UNITED STATES DISTRICT JUDGE